**Gregory WILSON, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

Nos. 97–SC–000228–MR,
97–SC–000288–MR.

Supreme Court of Kentucky.

May 21, 1998.

Rehearing Denied Oct. 15, 1998.

Frank Wm. Heft, Jr., Jefferson District Public Defender, Rob Eggert, Assistant Public Defender, Daniel T. Goyette, Assistant Public Defender, Leo G. Smith, Assistant Public Defender, Louisville, Margaret E. Keane, Greenbaum, Doll & McDonald, Louisville, for Appellant.

A.B. Chandler, III, Attorney General, Connie Vance Malone, Assistant Attorney General, David A. Smith, Assistant Attorney General, Donald C. Buring, Assistant Attorney General, Janet M. Graham, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

GRAVES, Justice.

Appellant, Gregory Wilson, was convicted in the Kenton Circuit Court of murder, kidnapping, first-degree rape, first-degree robbery and criminal conspiracy to commit robbery, for his participation in the 1987 death of Deborah Pooley. Appellant was sentenced to death on the murder and kidnapping convictions and to consecutive prison terms of 20, 20 and 10 years respectively for the first-degree rape, first-degree robbery and criminal conspiracy to commit robbery convictions.

On direct appeal, this Court affirmed the convictions and sentences with the exception of the kidnapping sentence, which was vacated and remanded for resentencing. *Wilson v. Commonwealth,* Ky., 836 S.W.2d 872 (1992). The trial court subsequently sentenced Appellant to life imprisonment on the kidnapping conviction, the maximum sentence for kidnapping as a Class A felony. On appeal, this Court again reversed and re-manded on the grounds that Appellant was required to be resentenced by a jury unless the trial court imposed the minimum allowable sentence. Consequently, the trial court sentenced Appellant to 20 years imprisonment on the kidnapping charge.

On March 26, 1996, Appellant filed an RCr 11.42 motion to vacate his convictions. The trial court heard testimony for nine days and thereafter issued a seventy-seven page opinion and order which denied Appellant's motion. The motion to reconsider was denied and this appeal ensued. The two issues raised by Appellant are whether he knowingly and voluntarily waived his right to counsel and chose to proceed *pro se,* and whether the trial court denied him a full and fair evidentiary hearing.

I.

Following several failed attempts by the trial court to obtain counsel willing to accept appointment to represent Appellant, in June 1988, attorney William Hagedorn responded to Kenton Circuit Judge Raymond Lape's plea for counsel with an offer to represent Appellant pro bono. Attorney John Foote was subsequently appointed to assist in the defense.

In July 1988, Appellant filed a *pro se* motion to disqualify Judge Lape and objected to the order appointing Hagedorn and Foote. A hearing was held on August 6, 1988, during which Appellant was represented by Mario Conte of the National Association of Criminal Defense Lawyers. Appellant asserted that Hagedorn and Foote were not competent to represent him in a Capital case. However, Judge Lape terminated the hearing when Conte attempted to bring forth evidence of Hagedorn's alleged past unethical behavior.

Appellant repeatedly asserted that he did not want the assistance of Hagedorn and Foote because they were unprepared, ill-trained, and lacked the necessary competence and experience to represent him. On the second day of the trial during voir dire, Judge Lape explained to Appellant his right to proceed *pro se* and the dangers associated with self-representation. Judge Lape then conducted an on-the-record colloquy with Appellant to determine whether his decision to

proceed *pro se* was knowing, intelligent and voluntary. The colloquy is set forth in *Wilson, supra,* and need not be repeated herein. However, at the conclusion of the colloquy, Judge Lape stated, "And at this time, I find that the Defendant has knowingly and voluntarily waived his right to use counsel if he so chooses, and I will permit him to represent himself, or to request of the two assigned lawyers to help him if he so chooses."

Appellant argues that he did not knowingly, intelligently and voluntarily waive his right to counsel, and did not elect to proceed *pro se.* Further, Appellant alleges that Judge Lape erred in failing to inquire sufficiently concerning Appellant's reason for objecting to Hagedorn and Foote's representation. He claims that he was forced either to represent himself or to be represented by unprepared and incompetent counsel. In support, Appellant sets forth multiple examples which he believes demonstrate ineffectiveness of Hagedorn and Foote.

On direct appeal, this Court thoroughly discussed and analyzed the issue of whether Appellant knowingly and voluntarily chose to proceed *pro se.* In finding that Appellant did, in fact, waive his right to counsel, this Court stated,

> [W]e believe that a fair reading of the record as a whole clearly indicates that Wilson understood the dangers and disadvantages of self-representation. He knew he was entitled to counsel, yet the record clearly establishes that he elected to proceed with his eyes wide open.
>
> Wilson's course of conduct during the trial in his persistent refusal to accept his own appointed counsel, his refusal to hire his own attorney or to expressly waive his right to an attorney, and his insistence that the court appoint him an attorney who met Wilson's specifications as a death penalty expert clearly put the trial judge between the proverbial rock and a hard place. We believe that the trial court's decision to allow Wilson to proceed with standby counsel was under the circumstances fair and reasonable.

*Id.* at 884.

Moreover, despite Appellant's contentions otherwise, our opinion addressed the sufficiency of Judge Lape's questioning, and rejected Appellant's claim that the trial court should have conducted an extensive inquiry into appointed counsel's background, qualifications, fitness and alleged acts of misconduct.

The consequences of adopting the intensive pretrial scrutiny of counsel such as advocated by Wilson would have an even more devastating and adverse effect. If such a standard were adopted, we shudder to think of the impact it would have on the willingness of attorneys to serve indigent defendants *pro bono.*

We are mindful of the authority cited by Wilson but we fail to find in these cases any grant of authority for a trial court to allow an indigent defendant to put his appointed counsel on trial for alleged past transgressions.

*Wilson, supra* at 879; *see also McQueen v. Commonwealth,* Ky ., 721 S.W.2d 694, 701 (1986).

With regard to Appellant's recitation of alleged examples of ineffective assistance of counsel, we also addressed the merits of such claims in the direct appeal. Again, we need not reiterate the details set forth in the original opinion. In applying the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we determined that Hagedorn and Foote did render Appellant effective assistance of counsel in those instances when they were allowed to participate in the trial. *Wilson, supra* at 879.

■ In an RCr 11.42 proceeding, the movant cannot raise issues which were raised and decided on direct appeal. *Stanford v. Commonwealth,* Ky., 854 S.W.2d 742 (1993), *cert. denied,* 510 U.S. 1049, 114 S.Ct. 703, 126 L.Ed.2d 669 (1994). In *Brown v. Commonwealth,* Ky., 788 S.W.2d 500 (1990), this Court held that the law of the case doctrine prevents review of issues raised in the direct appeal. "It is not the purpose of RCr 11.42 to permit a convicted defendant to retry issues which could and should have been raised in the original proceeding, nor those that were raised in the trial court and upon appeal considered by this court." *Id.* at 501

(quoting *Thacker v. Commonwealth,* Ky., 476 S.W.2d 838, 839 (1972)).

■ There are few exceptions to the law of the case doctrine. In *Gossett v. Commonwealth,* Ky., 441 S.W.2d 117 (1969), our predecessor court noted that "the appellate court [may] ... admit and correct an error made in the previous decision where substantial injustice might otherwise result and the former decision is clearly and palpably erroneous." *Id.* at 118. Appellant argues that the law of the case doctrine is not applicable because evidence was produced during the RCr 11.42 proceedings that was unavailable on direct appeal, and thus our original decision is erroneous. We disagree.

We must point out that Appellant's argument in this respect strikes at the very essence of the danger in raising an ineffective assistance of counsel claim on direct appeal. Evidence of such claims, more often than not, lacks adequate development at the time of the initial appeal. Nevertheless, in this case, although the evidence at the RCr 11.42 hearing supplemented the record to some extent, there were no surprises or unknown facts revealed. The evidence, for the most part, was simply a repeat of the issues we reviewed on direct appeal. We are of the opinion that the law of the case doctrine applies squarely to this case and we will not review those matters that were decided on direct appeal.

## II.

■ Appellant next argues that he was denied a full and fair evidentiary hearing. After Appellant filed his motion for a hearing pursuant to RCr 11.42, the trial court issued an order granting the hearing, but limiting it "initially to examination of whether [Appellant] waived his right to counsel and chose to proceed pro se; whether that choice was knowing, intelligent and voluntary; and whether [he] did in fact represent himself in accordance with *Faretta v. California,* [422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ] ... and *Wake v. Barker,* [Ky., 514 S.W.2d 692 (1974) ]." The trial court stated that there was no need to reach the other issues raised by Appellant unless he prevailed on the first issue by demonstrating he

did not voluntarily choose to proceed *pro se.* Appellant points out, however, that the court's seventy-seven page opinion and order denying his RCr 11.42 relief did, in fact, address the other issues raised by Appellant in his motion.

■ RCr 11.42 requires a hearing "if the answer raises a material issue of fact that cannot be determined on the face of the record." RCr 11.42(5); *Stanford, supra* at 743. A movant in an RCr 11.42 proceeding is not automatically entitled to an evidentiary hearing, even in death penalty cases. *Skaggs v. Commonwealth,* Ky., 803 S.W.2d 573 (1990), *cert denied,* 502 U.S. 844, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991); *Stanford, supra.* Even the trial court in this case noted on the record that "This hearing is not required by law." However, the trial court afforded Appellant a hearing that lasted nine days.

■ Moreover, Appellant's premise that an RCr 11.42 hearing is an all or nothing proposition is flawed. *Skaggs, supra* and *Stanford, supra,* make it clear that a hearing is not required on each and every issue raised in an RCr 11.42 motion. The trial court recognized that Appellant had to meet the threshold burden of showing that he did not voluntarily choose to proceed *pro se* before a hearing on the other issues was warranted. As such, when Appellant did not satisfy his burden, the trial court refused to permit him to introduce other evidence.

■ Notwithstanding the limitation it placed on the hearing, the trial court was still required to rule on all of the issues raised in Appellant's motion. Appellant somehow believes that if he was not allowed to proceed on all of his claims during the hearing, the trial court was prohibited from subsequently ruling on them. Appellant is mistaken. The trial court was simply able to resolve the remaining issues from the face of the record, *Glass v. Commonwealth,* Ky., 474 S.W.2d 400 (1972) and *Ford v. Commonwealth,* Ky., 453 S.W.2d 551 (1970), or it determined that the allegations, even if true, would not be sufficient to invalidate Appellant's convictions. *Brewster v. Commonwealth,* Ky.App., 723

S.W.2d 863 (1986). A hearing on all issues was not warranted or required.

Considering the fact that the trial court granted a hearing to resolve an issue that had been decided by this Court on direct appeal, we question whether Appellant had a right to such hearing. However, Appellant nonetheless received a nine day hearing. A review of the record reveals that he was given a full and fair evidentiary hearing.

The judgment of the Kenton Circuit court is hereby affirmed.

All concur.