Jeffrey LEONARD, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2007–SC–000531–MR.

Supreme Court of Kentucky.

Jan. 22, 2009.

Rehearing Denied April 23, 2009.

See also, 187 F.Supp.2d 755.

Dennis James Burke, Assistant Public Advocate, Department of Public Advocacy, LaGrange, KY, David Michael Barron, Department of Public Advocacy, Frankfort, KY, for Appellant.

Jack Conway, Attorney General, David A. Smith, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, for Appellee.

Opinion of the Court by Justice
NOBLE.

Appellant, Jeffrey Leonard, alias James Earl Slaughter,[1] appeals from a denial of

---

1. It appears that Appellant's real name is Jeffrey Devan Leonard, though he was prosecuted as "James Earl Slaughter." His previous appeals and collateral attacks were taken under that alias as well. His real name appears to have first been revealed in the context of his RCr 11.42 proceeding, where it was part of the basis of his claim of ineffectiveness of trial counsel (specifically, he argued that it showed his trial counsel had

his motion under CR 60.02 to be relieved from a 1995 order denying his RCr 11.42 collateral attack motion, several issues in which were held on appeal to be procedurally barred because related issues had been addressed in his direct appeal. He now argues he should be able to reopen the RCr 11.42 proceeding to apply this Court's decision in *Martin v. Commonwealth*, 207 S.W.3d 1 (2006), which held that issues unsuccessfully appealed under the palpable error rule, RCr 10.26, can give rise to a separate claim of ineffective assistance of counsel, which may be pursued in collateral proceedings. However, because *Martin* announced a new procedural rule, it is not retroactively applicable, and the circuit court's order is affirmed.

## I. Background

Appellant was convicted of murder and robbery and was sentenced to death in 1983. His conviction and sentence were affirmed on direct appeal in 1987, *Slaughter v. Commonwealth*, 744 S.W.2d 407 (Ky. 1987), and the United States Supreme Court denied certiorari in 1989. *Slaughter*

*v. Kentucky*, 490 U.S. 1113, 109 S.Ct. 3174, 104 L.Ed.2d 1036 (1989).

Later that same year, Appellant initiated a collateral attack on his conviction by filing an RCr 11.42 motion. As the trial court noted in its subsequent order resolving the RCr 11.42 claims, "[t]he motion languished" for several years thereafter. Eventually, in 1994, the trial court ordered the matter to proceed and held a three-day evidentiary hearing, at which testimony from Appellant's trial counsel and a number of other witnesses was presented. In its subsequent order, the trial court noted that an "impressive display of 'mitigating' evidence" had been presented and that "many" of the issues raised in the RCr 11.42 motion "were adjudicated by the direct appeal."[2] Ultimately, however, the trial court held that Appellant's trial counsel had not been ineffective and thus denied the RCr 11.42 motion.

This Court affirmed the trial court in 1999. *Slaughter v. Commonwealth*, 96–SC–0049–MR, at *2 (Ky. Sept. 23, 1999) (unpublished). In resolving the appeal, this Court held that many of the issues Appellant raised were procedurally barred, either because they had been raised and

---

done so little investigation that he did not know his client's real name). This Court's Opinion affirming the denial of RCr 11.42 relief recognized his real name for the first time, stating, "[T]he name given him at birth was Jeffrey DeVan Leonard." *Slaughter v. Commonwealth*, 96–SC–0049–MR, at *2 (Ky. Sept. 23, 1999) (unpublished). His real name was also recognized in the context of federal habeas corpus litigation. *See Slaughter v. Parker*, 187 F.Supp.2d 755, 767 n. 1 (W.D.Ky. 2001) ("Petitioner's true name is not James Earl Slaughter. His legal name is Jeffrey Devane Leonard. Because the state court decisions repeatedly refer to Petitioner by his alias, this Opinion will also use the alias."). Unfortunately, even that federal decision refers to Appellant's legal name with two different spellings. *Compare id.* ("Jeffrey Devane Leonard"), *with id.* at 775 ("Jeffrey Devan Leonard"). The current appeal has been tak-

en under Appellant's real name, Jeffrey Leonard.

2. The trial court's RCr 11.42 order does not include an issue-by-issue discussion as to which issues were resolved on direct appeal. However, a comparison between this Court's direct appeal Opinion and the issues discussed in greater depth in the subsequent decision affirming the trial court's RCr 11.42 ruling reveals that most of these issues were summarily resolved in the direct appeal by the following language: "Appellant raised 29 issues on appeal. Although we have carefully considered all of them, only certain ones will be discussed in this opinion. All others are without merit." *Slaughter v. Commonwealth*, 744 S.W.2d 407, 409 (Ky.1987). This Court went on to address specifically only 8 of the 29 issues in its direct appeal decision.

rejected on direct appeal (and thus could not be relitigated in the RCr 11.42 context), or because they could and should have been raised on the direct appeal (and thus could not be litigated at all in the RCr 11.42 context).

In 2006, this Court rendered its decision in *Martin v. Commonwealth*, holding that errors raised for the first time on appeal and found not to be palpable under RCr 10.26 could be the source of subsequent ineffective assistance of trial counsel claims. Within two months of that decision becoming final, Appellant filed a CR 60.02 motion to reopen the RCr 11.42 proceeding so that the merits of the claims previously held to be procedurally barred could be addressed. Appellant argued that *Martin* removed the procedural bar that had prevented many of his claims from being addressed on their merits in the initial RCr 11.42 proceeding.

The trial court denied the CR 60.02 motion. The court found that the motion had been filed within the reasonable time required by CR 60.02, but nevertheless held that *Martin* was inapplicable to Appellant because the rule it announced was not to be applied retroactively.

Appellant appealed as a matter of right. Ky. Const. § 115. After the notice of appeal was filed, but before the briefs were submitted, then Governor Ernie Fletcher commuted Appellant's death sentence to life in prison without the possibility of parole.

## II. Analysis

### A. Jurisdiction

As a preliminary matter, this Court's jurisdiction to hear this matter as a direct appeal must be addressed, since Appellant is no longer sentenced to death. Though neither party has raised or addressed the issue, this Court must determine for itself that jurisdiction is proper. *See Hook v. Hook*, 563 S.W.2d 716, 717 (Ky.1978) ("Although the question is not raised by the parties or referred to in the briefs, the appellate court should determine for itself whether it is authorized to review the order appealed from."); *Hubbard v. Hubbard*, 303 Ky. 411, 412, 197 S.W.2d 923, 923 (1946) ("This question is not raised by the record, nor is it referred to in the briefs, but jurisdiction may not be waived, and it can not be conferred by consent of the parties. This court must determine for itself whether it has jurisdiction.").

This Court has exclusive appellate jurisdiction over death penalty matters, even when the appeal involves a collateral attack on a sentence of death. *Skaggs v. Commonwealth*, 803 S.W.2d 573, 577 (Ky.1990) ("We take this occasion to express our view that the Court of Appeals is without authority to review any matter affecting the imposition of the death sentence."); *see also* CR 74.02 ("The filing of a notice of appeal in a case in which a death penalty has been imposed will automatically serve to transfer the appeal to the Supreme Court."). However, in a case without a death sentence, any appeal of a collateral attack must proceed initially at the Court of Appeals, even if exclusive jurisdiction over the direct appeal of the case is proper only with this Court. *Cardine v. Commonwealth*, 102 S.W.3d 927, 928–29 (Ky.2003). This is so even if the defendant has previously been under a death sentence that has been commuted to a lesser sentence at the time the appeal is undertaken, meaning that if a defendant's status with regard to being subject to the death penalty changes, then the proper forum for his appeals also changes. *E.g., Stanford v. Commonwealth*, 248 S.W.3d 579 (Ky.App.2007) (RCr 11.42 appeal was prosecuted at the Court of Appeals after

death sentence had been commuted to life in prison).

■ However, because Appellant was under a sentence of death when his appeal in this case began, the only appellate state court with jurisdiction to hear his appeals was this Court. The question then is whether the gubernatorial action of commuting Appellant's sentence removes the appeal from this Court's jurisdiction. The answer is simple: This Court will retain jurisdiction over such a case so long as jurisdiction was proper in the first place. This result furthers the interests of judicial economy (the case is already here, after all), is not prohibited by our rules, and complies with this Court's prior cases. *See Commonwealth v. Adkins,* 29 S.W.3d 793, 795 (Ky.2000) ("There is a presumption against divesting a court of its jurisdiction once it has properly attached, and any doubt is resolved in favor of retaining jurisdiction. Indeed, once a court has acquired jurisdiction, no subsequent error or irregularity will remove that jurisdiction, so that a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law, or both." (citations omitted)).

## B. Direct Appeals and Collateral Attacks

Whether certain types of issues can be raised in a collateral attack on a criminal conviction has always been a hard question. The difficulty lies in the need to resolve various competing interests: prevention of duplicative litigation, timely litigation of issues, finality of judgments, the need to bring issues in the proper forum, the right to be heard, and general fairness. In light of these interests, it is clear that some issues must be brought to the attention of the appellate courts in the direct appeal, while others must be presented first to the trial court by way of a collateral attack. There is little if any overlap between the two classes of claims.

■ These competing interests led to the adoption of the following rule, which has long been the law in Kentucky, concerning collateral attacks: "It is not the purpose of RCr 11.42 to permit a convicted defendant to retry issues which could and should have been raised in the original proceeding, nor those that were raised in the trial court and upon an appeal considered by this court." *Thacker v. Commonwealth,* 476 S.W.2d 838, 839 (Ky.1972). This rule has been applied consistently to bar two classes of claims from being brought in collateral attacks: (1) those that could and should have been litigated in the direct appeal; and (2) those that were actually litigated in the direct appeal. *See, e.g., Wilson v. Commonwealth,* 975 S.W.2d 901 (Ky.1998); *Stanford v. Commonwealth,* 854 S.W.2d 742, 747 (Ky.1993); *Brown v. Commonwealth,* 788 S.W.2d 500, 501 (Ky.1990). The first class is a pure procedural bar that aims to have issues raised only in the proper forum. *See Slaughter v. Parker,* 187 F.Supp.2d 755, 826 (W.D.Ky.2001), *overruled in part on other grounds by Slaughter v. Parker,* 450 F.3d 224 (6th Cir.2006) ("The Supreme Court relied on a well-established state law ground that issues that may be raised on direct appeal may not first be brought in a post-conviction motion to vacate." (citing *Thacker v. Commonwealth,* 476 S.W.2d 838, 839 (Ky.1972))). Technically speaking, the rationale for barring the second class of claims is more akin to collateral estoppel or issue preclusion than to a pure procedural bar, as it depends on the identical issue having been previously decided. It is also sometimes discussed as part of the "law of the case" doctrine. *E.g., Wilson v. Commonwealth,* 975 S.W.2d 901, 903–04 (Ky.1998).

In the 1990s, however, this procedural-bar rule was expanded to bar ineffective assistance of counsel claims related to issues that were raised on direct appeal. In *Sanborn v. Commonwealth*, 975 S.W.2d 905 (Ky.1998), this Court laid out the following rule:

We believe it is prudent to set out the standard of review of claims raised in a collateral attack under RCr 11.42. Such a motion is limited to issues that were not and could not be raised on direct appeal. *An issue raised and rejected on direct appeal may not be relitigated in these proceedings by claiming that it amounts to ineffective assistance of counsel.*

*Id.* at 908–09 (citing *Brown v. Commonwealth*, 788 S.W.2d 500 (Ky.1990), and *Stanford v. Commonwealth*, 854 S.W.2d 742 (Ky.1993)) (emphasis added). This broader language was repeated in several opinions in the following years: *Baze v. Commonwealth*, 23 S.W.3d 619, 624 (Ky. 2000); *Haight v. Commonwealth*, 41 S.W.3d 436, 441 (Ky.2001); *Sanders v. Commonwealth*, 89 S.W.3d 380, 385 (Ky. 2002); *Hodge v. Commonwealth*, 116 S.W.3d 463, 468 (Ky.2003); *Mills v. Commonwealth*, 170 S.W.3d 310, 326 (Ky.2005); *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky.2006). Essentially, this expanded rule would bar the exact type of claim Appellant seeks to bring. The most recent of these cases, *Simmons*, was rendered in February 2006 and became final in June 2006.

Only a few months after *Simmons*, this Court rendered its decision in *Martin v. Commonwealth*, 207 S.W.3d 1 (Ky.2006). On direct appeal, Martin claimed that the prosecutor had violated his due process rights by making improper comments during closing argument. "This Court criticized the prosecutor's comments and concluded that they were likely improper."

*Id.* at 2. However, no objection had been made at trial, so the claim could only lead to a reversal if it constituted palpable error under RCr 10.26. Ultimately, this Court concluded that the comments had not risen to that level of prejudice, that is, they did not constitute a "manifest injustice," and thus affirmed Martin's conviction.

In his subsequent RCr 11.42 motion, Martin argued that his attorney had been ineffective at trial by not objecting to the prosecutor's improper comments. Both the trial court and the Court of Appeals held that the issues that Martin raised in his RCr 11.42 motion had already been addressed in his direct appeal under the palpable error standard and were therefore procedurally barred from being presented in a subsequent collateral attack.

This Court reversed the Court of Appeals, holding that Martin could present his ineffective assistance of counsel claims in the RCr 11.42 context even though the underlying claim of error had been denied on direct appeal. In so holding, this Court noted that the standards for evaluating potential palpable errors on direct appeal and claims of ineffective assistance of counsel were substantially different, with the palpable error standard being more stringent. From this observation, the Court concluded:

This prevents a palpable error analysis from being dispositive of an ineffective assistance claim.

When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process. However, on collateral attack, when claims of ineffective assistance of counsel are before the court, the inquiry is broader. In that circumstance, the inquiry is not only

upon what happened, but why it happened, and whether it was a result of trial strategy, the negligence or indifference of counsel, or any other factor that would shed light upon the severity of the defect and why there was no objection at trial. Thus, a palpable error claim imposes a more stringent standard and a narrower focus than does an ineffective assistance claim. Therefore, as a matter of law, a failure to prevail on a palpable error claim does not obviate a proper ineffective assistance claim.

*Id.* at 4–5.

■ Implicit in *Martin* is the notion that in most instances a direct appeal allegation of palpable error is fundamentally a different claim than a collateral attack allegation of ineffective assistance of counsel based on the alleged palpable error. This makes sense because the issue "raised and rejected" on direct appeal is almost always not a claim of ineffective assistance of counsel. Instead, the palpable-error claim is a direct error, usually alleged to have been committed by the trial court (e.g., by admitting improper evidence). The ineffective-assistance claim is collateral to the direct error, as it is alleged against the

trial attorney (e.g., for failing to object to the improper evidence). Such a claim is one step removed from those that are properly raised, even as palpable error, on direct appeal. While such an ineffective-assistance claim is certainly related to the direct error, it simply is not the same claim. And because it is not the same claim, the appellate resolution of an alleged direct error cannot serve as a procedural bar to a related claim of ineffective assistance of counsel.

Unfortunately, *Martin* did not discuss or even cite the *Sanborn*-to-*Simmons* line of cases, though the rule repeated in them was in direct conflict with the new rule. The conflict being clear and having now been presented directly to this Court, and *Martin* having the superior logic, the *Sanborn*-to-*Simmons* line must give way. In *Martin*, this Court recognized the difference between an alleged error and a separate collateral claim of ineffective assistance of counsel related to the alleged error, and held that a claim of the latter may be maintained even after the former has been addressed on direct appeal, so long as they are actually different issues.[3]

---

3. Where the collateral ineffective assistance of counsel claim is presented in the course of the direct appeal, as occurred in *Bowling v. Commonwealth*, 981 S.W.2d 545, 549 (Ky.1998), and *Wilson v. Commonwealth*, 975 S.W.2d 901, 903–04 (Ky.1998), the issue cannot be relitigated in a collateral attack. *Bowling* and *Wilson*'s holdings—essentially, that an ineffective assistance claim already rejected in the context of the direct appeal cannot be reraised in the RCr 11.42 motion—are still good law. This, however, is because the collateral issue of ineffectiveness itself, not just the related direct error, had already been raised and rejected. Essentially, these cases reflect a specific application of the second class of procedural bar discussed above.

Nevertheless, as regards that specific application, it bears repeating the warning in *Wilson*: "We must point out that Appellant's argument in this respect strikes at the very

essence of the danger in raising an ineffective assistance of counsel claim on direct appeal. Evidence of such claims, more often than not, lacks adequate development at the time of the initial appeal." *Id.* at 903–04; *see also Brown v. Commonwealth*, 226 S.W.3d 74, 90 (Ky. 2007) (discussing premature ineffective-assistance claims). The concerns raised in *Wilson* are why this Court has also said,

As a general rule, a claim of ineffective assistance of counsel will not be reviewed on direct appeal from the trial court's judgment, because there is usually no record or trial court ruling on which such a claim can be properly considered. Appellate courts review only claims of error which have been presented to trial courts. Moreover, as it is unethical for counsel to assert his or her own ineffectiveness for a variety of reasons, and due to the brief time allowed for making post trial motions, claims of ineffec-

That holding is confirmed today. To the extent that *Sanborn, Baze, Haight, Sanders, Hodge, Mills,* and *Simmons* hold otherwise, and thus contradict *Martin,* they are overruled.[4]

### III. Retroactivity of *Martin*

■ The question then is whether Appellant may use the *Martin* rule reaffirmed today to reopen his RCr 11.42 proceedings and litigate those issues previously held to be procedurally barred. Because his conviction was final, having been affirmed on direct appeal, and his collateral attack was completed when *Martin* was rendered, Appellant can only benefit from the new rule if it is to be applied retroactively. Whether a new rule based on state law and announced by one of this Court's opinions is to be applied retroactively is one of first impression.

Retroactivity of new federal constitutional rules is controlled by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which held that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* at 310, 109 S.Ct. 1060.[5] The only exceptions are when the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe ... [or] it requires the observance of those procedures that ... are implicit in the concept of ordered liberty." *Id.* at 307, 109 S.Ct. 1060 (citations and internal quotation marks omitted) (second omission in original). Under *Teague,* once a conviction becomes final, that is, it has gone through the direct appeal process and been affirmed, the new rule is not applicable, even if the collateral attack is pending when, or has begun after, the new decision is rendered.

■ However, *Teague* is not binding on the states if they choose to broaden the

tive assistance of counsel are best suited to collateral attack proceedings, after the direct appeal is over, and in the trial court where a proper record can be made. This is not to say, however, that a claim of ineffective assistance of counsel is precluded from review on direct appeal, provided there is a trial record, or an evidentiary hearing is held on motion for a new trial, and the trial court rules on the issue. *Humphrey v. Commonwealth,* 962 S.W.2d 870, 872–73 (Ky.1998) (citations omitted).

**4.** The Commonwealth claims that *Martin,* whether retroactively applicable or not, cannot apply to Appellant's case because he was originally sentenced to death and thus received a higher level of appellate review by this Court. The Commonwealth argues that this Court's death sentence review process provides the same broad standard on direct appeal of unpreserved errors that is to be applied to claims of ineffective assistance of counsel, even though there has been no chance for an evidentiary hearing on the issue at that point. Because *Martin*'s outcome depended on a difference between the prejudice standards to be applied in palpable error re-

view on direct appeal and in claims of ineffective assistance of counsel, the Commonwealth argues, its rule need not be applied to Appellant's case. While this is certainly an interesting (and problematic) argument, it need not be addressed because the retroactivity analysis below resolves this case.

**5.** "Although *Teague* was a plurality opinion that drew support from only four Members of the Court, the *Teague* rule was affirmed and applied by a majority of the Court shortly thereafter. See *Penry v. Lynaugh,* 492 U.S. 302, 313, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) ('Because Penry is before us on collateral review, we must determine, as a threshold matter, whether granting him the relief he seeks would create a new rule. Under *Teague,* new rules will not be applied or announced in cases on collateral review unless they fall into one of two exceptions' (citation and internal quotation marks omitted))." *Danforth v. Minnesota,* — U.S. ——, 128 S.Ct. 1029, 1033 n. 1, 169 L.Ed.2d 859 (2008).

class of retroactively applicable rules. *Danforth v. Minnesota,* —— U.S. ——, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008). Nor is *Teague* binding as to a new rule grounded solely in state law (as opposed to the federal constitution). *American Trucking Associations, Inc. v. Smith,* 496 U.S. 167, 177, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (plurality opinion) ("When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions.").

■ This Court applied the *Teague* test in evaluating the retroactivity of new federal constitutional rules in *Bowling v. Commonwealth,* 163 S.W.3d 361, 370 (Ky. 2005). Under that decision, Kentucky's constitutional retroactivity rule is no broader than that employed by the federal courts. However, the rule contained in *Martin* was not of a constitutional dimension; rather, it was simply one of criminal procedure springing from this Court's own rules as to whether certain issues may be raised in a collateral attack. As such, this Court is free to adopt whatever standard of retroactivity it finds reasonable.

■ Nevertheless, *Teague's* proscription against applying new rules retroactively once a judgment is final on direct review makes sense, given the interest in finality of judgments. This is especially so in a case like this one where the initial conviction had been "final" for 17 years when *Martin* was rendered. Questions of retroactivity usually involve a new rule that would be applied in the course of a direct appeal, *e.g., Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (addressing retroactive applicability of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)), which is part of the reason such rules are not to be retroactively applied in the context of collateral attacks.

■ The retroactivity determination in this case is more complicated than usual because *Martin* announced a procedure—a new class of ineffective assistance claims—to be applied within the collateral attack itself, rather than a rule to be applied at trial or raised on direct appeal. In fact, as noted above, this Court has held that claims of ineffective assistance of counsel should not ordinarily be addressed in the course of a direct appeal. *See Humphrey v. Commonwealth,* 962 S.W.2d 870, 872 (Ky.1998). It makes little sense then to determine retroactivity by reference to when the conviction itself became final on direct appeal. Otherwise, Martin himself could not have enjoyed the benefit of this Court's decision, since his conviction was already final on direct appeal. Instead, the relevant "judgment" in determining retroactivity in a case like this one, where the new rule relates to procedures within the collateral attack itself, is the order resolving the collateral attack. The cutoff for retroactivity of a new collateral attack rule is thus when the order resolving a collateral attack becomes final, and any such new rule announced after the finality of such a collateral attack order is not retroactively applicable.

Thus, a new rule related to an RCr 11.42 proceeding would generally not be retroactively applicable to any other case where the order denying the RCr 11.42 motion was final (that is, having been appealed and affirmed). As applied in a case like this one, such a new rule could not be raised by way of a CR 60.02 motion used to collaterally attack an RCr 11.42 order.

In this case, the order denying Appellant's RCr 11.42 motion is therefore the relevant judgment. Appellant's RCr 11.42 collateral attack was denied in 1996 and the order was affirmed in 1999, making it "final" for almost seven years when *Martin* was decided. Thus, if *Martin* an-

nounced a new rule, it cannot be retroactively applied to Appellant's case to reopen the RCr 11.42 proceedings.

 Resolution of Appellant's current claim then turns on whether *Martin* announced a "new rule" of procedure. As noted in *Teague*, "[i]t is admittedly often difficult to determine when a case announces a new rule...." 489 U.S. at 301, 109 S.Ct. 1060. The Supreme Court chose to employ the following guideline: "In general ... a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* (citations omitted). Again, this Court finds this standard to be the appropriate one in determining whether a rule is "new" for the purposes of retroactivity.

Recognizing that this Court might employ a standard at least similar to that in *Teague*, Appellant argues that *Martin* did not announce a new rule and that it instead merely clarified the law that had been established in an earlier case, *Humphrey v. Commonwealth*, in which several claims of ineffective assistance of counsel related to failures to object at trial were raised on direct appeal.[6] The *Martin* Court cited the following language from *Humphrey*:

> [A] better approach would have been to have presented the unpreserved errors, if such could have been done in good faith, as palpable error under RCr 10.26. If that approach had been taken

unsuccessfully, an ineffective assistance of counsel claim based on those unpreserved errors would still be available in a collateral attack proceeding.

*Id.* at 873, *quoted in Martin*, 207 S.W.3d at 2.

The rule in *Martin*, however, was not dictated by this language, which was merely obiter dictum, or by any other then existing case law. In fact, the language was contradicted by the *Sanborn* line of cases, which began after *Humphrey* was decided. Clearly then, *Martin* broke new ground by allowing claims that were procedurally barred under the prior case law. Therefore, this Court can only conclude that instead of "clarifying the law," *Martin* established a new rule.

 Finally, Appellant claims that this Court's own procedural rules allow him to avoid the general rule against retroactive application of a decision. He first argues that the purpose of CR 60.02, under which the motion giving rise to this appeal was filed, is to allow a court to correct a mistake. Thus, he claims barring retroactive application would undermine the purpose and language of the rule. This is incorrect. As Appellant correctly notes, CR 60.02 replaced the common law writ of coram nobis. That writ, however, was aimed at correcting factual errors, not legal errors. *Barnett v. Commonwealth*, 979 S.W.2d 98 (Ky.1998). Appellant is not seeking remediation of a factual error; rather, he is seeking to correct the legal decision that his ineffective assistance claims were procedurally barred, a deci-

---

**6.** It is worth noting that Appellant's claim that *Martin* merely clarified the law undercuts any claim that the CR 60.02 motion was filed in a "reasonable time," since it was filed approximately seven years after the order denying the RCr 11.42 became final and eight years after *Humphrey* supposedly became the

law. However, the timeliness of the CR 60.02 motion is not at issue in this appeal, though the Commonwealth discusses it, because the trial court expressly found that the motion was timely filed, yet no appeal of that finding was taken.

sion that was correct under the case law in existence at the time.

A change in the law simply is not grounds for CR 60.02 relief except in "aggravated cases where there are strong equities." *Reed v. Reed*, 484 S.W.2d 844, 847 (Ky.1972). This is not such a case. Appellant has received significant direct and collateral review at the state and federal levels since his conviction some 25 years ago. His previous sentence has been reduced by gubernatorial order. The equities do not weigh in favor of using CR 60.02 to apply *Martin*'s change in the law to Appellant's case.

Appellant also argues that because new rules are frequently announced and applied in the appeals of RCr 11.42 decisions, even though the convictions addressed by those motions are final, the same relief should be available to him to avoid inconsistency by this Court. He notes specifically that the defendant in *Martin* effectively enjoyed the retroactive application of the new rule because his direct appeal was concluded and thus his conviction was final. This argument was addressed somewhat tangentially above. The defendant in *Martin* was able to enjoy the benefit of the new rule because it announced a new rule of procedure to be applied in RCr 11.42 proceedings, one of which was the source of the appeal in that case. Appellant's RCr 11.42 proceeding was concluded and final long before *Martin* was decided.

## IV. Conclusion

Because *Martin* announced a new rule of procedure to be applied in RCr 11.42 proceedings, it cannot be applied retroactively to such collateral attacks that were final when it was decided. Appellant's case falls squarely within this proscription.

For the forgoing reasons, the order of the Jefferson Circuit Court is affirmed.

All sitting. All concur.