RENDERED: MARCH 24, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0255-MR

JEFFREY L. ROHRBACK                                          APPELLANT

APPEAL FROM MASON CIRCUIT COURT
v.            HONORABLE STOCKTON B. WOOD, JUDGE
ACTION NO. 14-CR-00058

COMMONWEALTH OF KENTUCKY                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, EASTON, AND McNEILL, JUDGES.

McNEILL, JUDGE: Jeffrey Rohrback entered a conditional plea of guilty in Mason Circuit Court to one count of rape in the first degree. Consistently with his plea, and pursuant to a December 1, 2015 judgment, the circuit court sentenced him to a total of twenty years' imprisonment. Rohrback now appeals a January 8, 2020 order of the circuit court denying his Kentucky Rule of Criminal Procedure

(RCr) 11.42 motion to vacate the December 1, 2015 judgment. Upon review, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

In *Rohrback v. Commonwealth*, No. 2015-SC-000696-MR, 2017 WL 3634330 (Ky. Aug. 24, 2017), the Kentucky Supreme Court set forth much of the relevant history of this matter:

> On March 31, 2014, Maysville Police Department Detective Jered Muse visited Rohrback's apartment as part of an investigation into the alleged rape and sexual abuse of a ten-year-old girl. Detective Muse requested that Rohrback accompany him to the police station, which was across the street from Rohrback's apartment. Rohrback agreed and the pair walked back to the police station for questioning.
>
> At the beginning of the interview, Detective Muse informed Rohrback that he was free to leave and informed him of his *Miranda*[1] rights. Approximately one hour into the interview, the topic of a polygraph examination came up. At that point, Rohrback stated that "I want to go. I want to leave." However, Detective Muse continued to question Rohrback. At the end of the interview, Detective Muse asked if he could photograph Rohrback's apartment. Rohrback agreed and the two walked over to the apartment together.
>
> Several hours later, Rohrback returned to the lobby of the police station and requested to speak with Detective Muse. Once in the interview room, Detective Muse reminded Rohrback that he was free to leave at any time. *Miranda* warnings were not repeated by Detective Muse for Rohrback's second interview. After making

_____

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

several incriminating statements, Rohrback concluded the interview and returned home.

Shortly thereafter, Detective Muse again visited Rohrback's apartment and asked him if he was willing to write a letter of apology to the victim. Subsequently, Rohrback accompanied Detective Muse to the police station where he wrote a letter of apology, which included incriminating statements. After completing the letter, Rohrback was arrested by Detective Muse.

In April 2014, Rohrback was indicted by the Mason County grand jury for two counts of first-degree rape, two counts of first-degree sexual abuse, and for being a second-degree persistent felony offender. After indictment, Rohrback moved to suppress his oral and written statements to Detective Muse arguing that they were obtained in violation of "[his] *Miranda* Rights, Right to Counsel and Right to Remain Silent." The circuit court held a hearing to consider Rohrback's claims. After hearing testimony from Detective Muse, the circuit court concluded that Rohrback was not in custody when interviewed by the police and as such denied the motion to suppress.[FN]

> [FN] At the suppression hearing, the circuit court also heard testimony concerning a statement Rohrback made to a social worker from the Cabinet for Health and Family Services. That statement was determined to be inadmissible at trial as Rohrback had not been *Mirandized* and was subjected to a custodial interview by a state actor at the Mason County Detention Center.

After the denial of his motion to suppress, Rohrback withdrew his plea of not guilty and entered a conditional guilty plea. Rohrback pled guilty to a single count of first-degree rape. The remaining charges were dismissed. For this offense, the Commonwealth

recommended a total sentence of twenty years, and the circuit court sentenced Rohrback accordingly.

*Id*. at *1-2.

In his direct appeal before the Kentucky Supreme Court, Rohrback argued the circuit court erred by denying his motion to suppress and his additional motion to enforce what he asserted was a more favorable "plea agreement" he had entered with the Commonwealth by and through Detective Muse. The Court rejected both of Rohrback's arguments, explaining: (1) his motion to suppress had been properly denied because he had not been in custody when he made his incriminating statements at issue; and (2) his subjective belief that he had negotiated a plea agreement with Detective Muse was unreasonable. *Id*. at *2-6.

Rohrback later moved to vacate his sentence pursuant to RCr 11.42, arguing his trial counsel had been deficient in representing him. Rohrback was provided with appointed counsel and the circuit court held a full evidentiary hearing to resolve the numerous allegations of his motion. After considering the evidence presented – which primarily consisted of Rohrback's own testimony and the testimony of his trial counsel, Paul Cox – the circuit court entered a detailed order denying Rohrback's motion. This appeal followed. The specifics of the circuit court's order, as well as other relevant details, will be discussed in our analysis.

## STANDARD OF REVIEW

In a motion brought under RCr 11.42, "[t]he movant has the burden of establishing convincingly that he or she was deprived of some substantial right which would justify the extraordinary relief provided by [a] post-conviction proceeding." *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151, 159 (Ky. 2009) (citation omitted). An RCr 11.42 motion "is limited to issues that were not and could not be raised on direct appeal." *Id.*

A successful petition for relief under RCr 11.42 for ineffective assistance of counsel must survive the twin prongs of "performance" and "prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *accord Gall v. Commonwealth*, 702 S.W.2d 37, 39-40 (Ky. 1985). As explained by the Kentucky Supreme Court, "[a] deficient performance contains errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (internal quotation marks and citation omitted). Moreover, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial

strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (internal quotation marks omitted). As further stated in *Strickland*, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690, 104 S. Ct. at 2066.

As to the second *Strickland* prong, the defendant has the duty to "affirmatively prove prejudice." *Id*. at 693, 104 S. Ct. at 2067. In the context of a guilty plea:

> A conclusory allegation to the effect that absent the error the movant would have insisted upon a trial is not enough. The movant must allege facts that, if proven, would support a conclusion that the decision to reject the plea bargain and go to trial would have been rational, *e.g.*, valid defenses, a pending suppression motion that could undermine the prosecution's case, or the realistic potential for a lower sentence.

*Stiger v. Commonwealth*, 381 S.W.3d 230, 237 (Ky. 2012) (citations and footnote omitted).

Where, as here, the trial court conducts an evidentiary hearing regarding the claim of ineffective assistance of counsel, RCr 11.42(6) requires the court to "make findings determinative of the material issues of fact and enter a final order accordingly." *Cawl v. Commonwealth*, 423 S.W.3d 214, 216 (Ky. 2014). "[W]hen reviewing a trial court's findings of fact following an RCr 11.42 evidentiary hearing, an appellate court utilizes the clearly erroneous standard set

forth in Kentucky Rules of Civil Procedure (CR) 52.01. Findings of fact are not clearly erroneous if supported by substantial evidence. Even though claims of ineffective assistance of counsel are subject to *de novo* review, a reviewing court should defer to the determination of facts made by the trial judge." *Saylor v. Commonwealth*, 357 S.W.3d 567, 570-71 (Ky. App. 2012) (citations omitted).

## ANALYSIS

In his RCr 11.42 motion, Rohrback presented what the circuit court regarded as nine different claims of ineffective assistance of counsel. In its dispositive order of January 8, 2020, the circuit court summarized and addressed each of his claims as follows:

> **I. That Trial Counsel was Ineffective when Counsel Failed to Confer with the Defendant Without Undue Delay and As Necessary**.
>
> Honorable Paul W. Cox, Jr., a staff attorney with the Department of Public Advocacy since 2000, was assigned this case due to a conflict with the local Department of Public Advocacy's Office. Mr. Cox testified that he met with the Defendant shortly after he received the case file, met in person with Defendant between 5-10 times, and conferred with Defendant more times by phone. Additionally, Defendant admitted in his guilty plea colloquy on September 23, 2015 that he had all the time he felt necessary to talk with his attorney and was fully satisfied with the services his attorney performed. Defendant's assertion that his counsel failed to meet with him is not credible. Counsel prior to Mr. Cox had done extensive work on the case, which was reviewed by Mr. Cox.

-7-

**II.  That Trial Counsel was Ineffective when Counsel Failed to Request for Bill of Particulars**.

It is clear from the record that the Commonwealth provided the information which fairly informed the Defendant of his charges and the circumstances.  See page 29 of the record, "Commonwealth's Discovery Response", which includes the Case Report from the Maysville Police Department, Copy of Grand Jury Testimony, Written Statement from Jeffrey Rohrback and Lisa Hampton, Medical Exam from the Buffalo Trace Children's Advocacy Center, and Interviews and Photographs.  Additionally, more of the information was fleshed out in the suppression hearing testimony and supplemental discovery as shown by the record.

**III.  That Trial Counsel was Ineffective when Counsel Failed to Seek, Interview, and Take Depositions of the Commonwealth's Witnesses as well as Witnesses for the Defense**.

Defendant has shown no way any more investigation would have resulted in any different outcome.  There was no alibi suggested by Defendant.  Defendant confessed.  Defendant's counsel extensively questioned the Detective who interviewed the Defendant, and questioned the social worker at the suppression hearing.  The 10 year old victim was not interviewed, but undoubtably would not have been allowed to interview by her mother.  Mr. Cox had "limited success" when he attempted to contact the victim's mother.  The Court believes defense counsel was very aware of what each witness would say.

**IV.  That Trial Counsel was Ineffective when Counsel Failed to Utilize Expert Assistance in Preparing for Trial as well as Cross-Examination of the Commonwealth's Witnesses**.

The record is replete with requests and orders for expert assistance which, even if requested by prior counsel,

were available to Mr. Cox. Mr. Cox testified that in his 30 year attorney experience and recent extensive experience with false confession law, any false confession assertion would have been pointless. False confession didn't fit the facts of this case. The Court finds Counsel's performance was not deficient due to any lack of use of experts.

**V.  That Trial Counsel was Ineffective when Counsel Failed to do Pre-Trial Investigation into the Defendant's case at hand; Further, when Counsel Failed to Properly Advise Mr. Rohrback of Viable Defense**.

A.  The testimony of counsel reflects extensive pretrial investigation, going over taped statements, carefully reviewing the file, talking with the previous attorney, inquiring of the investigating witnesses at the suppression hearing. The Court believes Mr. Cox was as ready as he could be or was well on his way to being ready for trial, had Defendant not entered a guilty plea.

B.  Defendant does not list what "viable defense" his attorney should have advised him of. Defendant confessed several times.

**VI.  That Trial Counsel was Ineffective when Counsel Failed to Advocate for Mr. Rohrback Against the Commonwealth's Allegations at Hand**.

The allegation is too vague to address with specificity.

**VII.  That Trial Counsel was Ineffective when Counsel Failed to Fully Explain to Mr. Rohrback Any Possible Defenses; Further, When Counsel Failed to Fully Explain to Mr. Rohrback of his Rights he would Waive if he Accepted a Plea**.

A.  Counsel was sure he explained to Defendant what the Commonwealth would have to prove – based upon him

-9-

doing so in every case – and "absolutely" went over it very carefully repeated times. Counsel was sure he went over very carefully what their defense strategy would be.

B. Counsel and Defendant certified on the Motion to Enter Guilty Plea (9/23/2015) and Transcript that Defendant's constitutional rights were fully explained, including that Defendant knew the charges and any defenses to them.

C. Defendant acknowledged in his plea colloquy that he knew he was receiving 20 years, and that he would not be eligible for parole until he had served 85% of the sentence. Any other collateral consequences (though none are specified, and this aspect of the motion failed for that reason) pale in comparison to the 85% (17 year) minimum service acknowledged by the Defendant.

## VIII. That Trial Counsel Failed to Protect the Rights of his Client.

The Court believes Mr. Cox protected the rights of his client, obtaining the minimum sentence on a single charge, having the Persistent Felony Offender charge dismissed, and preserving his client's right to appeal the Circuit Court's pretrial rulings regarding suppression of statements.

## IX. That Trial Counsel's Cumulative Errors Resulted in the Entry of an Unconstitutional Conviction.

The Court does not believe trial counsel's errors, if any, cumulatively violated Defendant's constitutional rights.

In sum, the circuit court denied Rohrback's RCr 11.42 motion after

determining Rohrback had failed to survive either the "performance" or

"prejudice" prongs provided in *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

-10-

On appeal, Rohrback largely restates, without further elaboration, the nine claims he offered below that the circuit court boldfaced and underlined in its order set forth above. Upon review, the circuit court's findings with respect to each of those claims are consistent with Cox's testimony, the record, and the circuit court's sound discretion and fact-finding role; and it is enough to state that they are not indicative of clear error. CR 52.01.

However, Rohrback also presents several other claims that are distinctly different from what he offered during the evidentiary hearing. His initial set of these claims – which he now asserts under the auspices of what the circuit court determined were his claims I, V, VI, VIII, and IX – stems from approximately three minutes of Cox's testimony that Rohrback did not cross-examine during the evidentiary hearing. Before discussing the specifics of these claims, it is necessary to review the testimony in question:

> COUNSEL: Do you recall when you first met with Mr. Rohrback regarding the case?
>
> COX: I do not recall the exact date. Shortly after I got the file.
>
> COUNSEL: And do you recall what your first appearance was here in court on the case?
>
> COX: The date? No.
>
> COUNSEL: I believe the record will speak for itself on that.

COX: I, you know, I haven't reviewed those records in, it's been a few years now. To try to recall the exact date is, for me, it's an impossibility.

COUNSEL: I understand. Um, do you know approximately how many times you met with or spoke with Mr. Rohrback?

COX: I didn't count. I would estimate, you know, somewhere between five and ten times.

COUNSEL: And were those in person or via telephone?

COX: Those would be in person. And on the phone, um, more.

COUNSEL: And the in-person visits, did they take place here in the courthouse?

COX: It would be the courthouse and jail.

COUNSEL: Did you review the discovery and the evidence that would be used against Mr. Rohrback with him?

COX: Very carefully.

COUNSEL: And where did that take place?

COX: *My office*.

COUNSEL: And did you explain each charge that Mr. Rohrback had been charged with, and what the Commonwealth would have to prove, to convict him of those?

COX: *You know*, I'm sure I did, based upon what I do with every case. I'm gonna have to go on my, um, I don't remember the exact date and time and location that we carefully went over it, but I know that I do that on a

-12-

regular, on every, especially a serious case like this, I'll take an extra amount of time to break it down. And with Mr. Rohrback, I think we went over and over some areas repeatedly that, that we were interested in.

COUNSEL: Did you discuss, um, what the maximum penalties would be?

COX: Absolutely.

COUNSEL: And, um, did you discuss what your defense strategy would be with him?

COX: More than once, very carefully.

(Emphasis added.)

Rohrback's first argument is based upon his interpretation of the foregoing exchange and what he believes was a contradiction in Cox's testimony demonstrating, in his view, that he and Cox did *not* review any aspect of his case together. In his brief, he argues:

> A.) "THE ONLY PLACE" Hon. Paul Cox was adament [sic] and positive about having discussions with Mr. Rohrback was in "<u>MY OFFICE</u>" [VR 8/14/2019 4:13-4:22.]
>
> . . .
>
> B.) Hon. Paul Cox testified, he did not explain each charge and did not discuss what the Commonwealth would have to prove to convict Mr. Rohrback of the charges. When asked if he did, Mr. Cox testified answer [sic] was "<u>NO</u>" [VR 8/14/2019 4:26-4:35.]

-13-

C.) Mr. Cox could not have discussed the maximum penalties of each charge, because he testified that he did not explain each charge with Mr. Rohrback. Further, Mr. Rohrback was never present in Mr. Cox's office to discuss anything. Therefore, Mr. Cox's testimony at [VR 8/14/2019 5:16-5:30] could not have taken place.

D.) According to Mr. Cox's own testimony, any important and vital conversations regarding Mr. Rohrback's case could only have taken place in Mr. Cox's office.

E.) The Trial Record shows no motions put forth by Hon. Paul Cox, and does not show any orders issued by the Trial Court, to have Mr. Rohrback transported to Hon. Paul Cox's office.

(Footnotes omitted.)

But, there are at least two flaws in Rohrback's argument which render it meritless. First, part "B.)" is founded entirely upon Rohrback's misrepresentation of the record. When asked, "did you explain each charge that Mr. Rohrback had been charged with, and what the Commonwealth would have to prove, to convict him of those?" Cox did not say "No." Rather, as emphasized above, Cox prefaced his answer with "you know," and then testified he believed he did so based upon his usual practice.

Second, with respect to the remaining four parts of his argument, Cox never testified he *met* with Rohrback in his office. Cox testified he only met with Rohrback at "the courthouse and jail." True, Cox also indicated he "review[ed] the discovery and the evidence that would be used against Mr. Rohrback with him,"

-14-

and did so *in his office*.  However, Cox further testified he frequently communicated with Rohrback by telephone.  Accordingly, it is reasonable to infer that Cox (1) had a telephone in his office and (2) used that telephone to call Rohrback at the jail to discuss and review the discovery and the evidence pertinent to Rohrback's case.  If Rohrback desired further clarification, he could have cross-examined Cox on this point.  As noted, he chose not to do so; and his speculation about what cross-examination *might* have revealed provides no basis for reversing.

We now proceed to Rohrback's second argument with respect to Cox's above-stated testimony.  He contends that call logs from the jail where he was housed during the pendency of his underlying charges demonstrate Cox spoke with him fewer than what Cox testified was "between five and ten times."  He concedes, however, that he did not adduce the aforementioned call logs below.  Accordingly, we cannot review this or any other argument Rohrback now asserts based upon these call logs, as "an appellate court cannot consider items that were not first presented to the trial court."  *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

Moving on, Rohrback's next additional argument – which he also offers under the umbrella of his claims I, V, VI, VIII, and IX – is that he told Cox on several occasions that he wished to proceed to trial, but that Cox nevertheless

coerced him into accepting the Commonwealth's plea offer.  In his brief, he

describes how Cox managed to do so:

> Mr. Rohrback states, Mr. Cox overwhelmed his free will on September 23, 2015, by intentionally holding any and all information regarding Mr. Rohrback's transport to Rowan County Courthouse at 9am [TR 1, 144].  Mr. Cox deceived him, ambushed him, with a meeting between Cox, the Commonwealth Attorney and a retired Judge, the morning of September 23, 2015, with intent to overwhelm and scare Mr. Rohrback into taking a plea deal, for the purpose of making good on his opening statement to the Trial Court on 7/10/2015 when Mr. Cox stated, "Well, I mean I want to pursue potential plea options." [VR 7/10/2015 11:05:46].

> As Mr. Rohrback states in his affidavit [Exhibit 1], Mr. Cox never told him he was being transported to Rowan County Courthouse.  Never told him he was going to be confronted by a retired Judge.  Further, Mr. Rohrback states in his Affidavit [Exhibit 1], he became "so scared . . . I thought I would pee myself" and "scared to death" when he found out where he was going and was confronted with a retired Judge.  And became "scared and confused" when the Judge told him, "if he was over my case he would find me guilty of the crime and lock me up for a long time."

> After being ambushed by an unforeseen meeting and "scared" into taking a plea deal by a retired Judge, Mr. Rohrback was immediately transported back to Mason Circuit Court where, Mr. Rohrback, "scared to death" and "confused," unknowingly and unintelligently agreed to and signed a guilty plea deal because "he only took the plea deal because I did not feel that I had any other choice."  [Exhibit 1].

> Mr. Rohrback was not in his right mind when he agreed to and signed the guilty plea deal.  Mr. Cox could

not have discussed anything about the plea deal or informed Mr. Rohrback of the possible consequences or rights Mr. Rohrback would give up, if Mr. Rohrback signed the plea deal.

With that said, there are three notable aspects of this argument. First, it gleans the entirety of its evidentiary support from an affidavit (Exhibit 1) that Rohrback attached to his RCr 11.42 memorandum and filed of record on August 9, 2018 – over a year prior to the August 14, 2019 evidentiary hearing. Second, Rohrback cites no testimony or other evidence adduced at the evidentiary hearing in support of this argument, nor does he identify when, during the evidentiary hearing, he made this argument. Indeed, this Court has reviewed the entirety of the evidentiary hearing; and there, Rohrback did not make this argument at all or mention his prior affidavit. Third, and of equal import, the circuit court made no findings and did not otherwise address this argument in its dispositive order. Consequently, we are not authorized to address this argument. Absent the introduction of evidence to support an allegation made in an RCr 11.42 hearing, the issue is properly deemed to have been waived. *King v. Commonwealth*, 408 S.W.2d 204, 205 (Ky. 1966). Moreover, because the circuit court made no findings relative to this argument, and because Rohrback filed no post-judgment motion requesting findings, this argument cannot serve as a basis for reversing or remanding. *See* RCr 11.42(6).

Next, Rohrback faults Cox for failing to retain two expert witnesses, Drs. Fabian and Guertin. Regarding the former expert, Cox testified he considered retaining Dr. John Fabian, a neuropsychologist, to evaluate Rohrback's mental health out of an "abundance of caution" because Rohrback had made claims that the incriminating statements he had provided the police were not accurate. In his brief, Rohrback does not explain why retaining Dr. Fabian was necessary for his case, or how Dr. Fabian would have affected the outcome. Accordingly, this cannot serve as a basis of error.

As for the latter expert, Rohrback's only mention or description of Dr. Stephen Guertin during these RCr 11.42 proceedings prior to this appeal was limited to the following nebulous statement set forth in Rohrback's August 9, 2018, RCr 11.42 memorandum:

> Funding was sought, and obtained, for several experts by Hon. Sara Fightmaster, prior of her being forced off Mr. Rohrback's case for a conflict. One such expert was a Pediatric Expert, Dr. Stephen Guertin, MD., who was very damaging to the Commonwealth's expert, Dr. Ross as well as the Commonwealth's case.

Rohrback waived further review of this issue by failing to mention or make any argument regarding Dr. Guertin during the evidentiary hearing. *King*, 408 S.W.2d at 205. The circuit court also made no findings relative to this argument, and Rohrback filed no post-judgment motion requesting findings. *See* RCr 11.42(6). Indeed, the first substantive discussion Rohrback has presented

-18-

regarding Dr. Guertin has been in this appeal. Specifically, he filed a motion with this Court to take "judicial notice" of a "transfer memo" that his prior counsel purportedly gave to Cox when Cox was appointed to represent him in 2015, which discussed Dr. Guertin in depth – a "transfer memo" Rohrback never adduced below. Because Rohrback made no argument before the circuit court regarding Dr. Guertin or this transfer memo, we are not at liberty to address this aspect of Rohrback's appeal, either. *Oakley*, 391 S.W.3d at 380.

Rohrback also argues Cox was ineffective "when counsel failed to supress [sic] defendants statements." Over the next two pages of his brief, Rohrback then proceeds to reargue why, in his view, the incriminating statements at issue in his direct appeal before the Kentucky Supreme Court should have been suppressed. However, as indicated at the beginning of this Opinion, Cox attempted to suppress Rohrback's statements. His lack of success – which appears to be the extent of Rohrback's complaint in this regard[2] – does not indicate he was *ineffective*. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

_____

[2] Rohrback's memory may also have played an initial role in his assertion of this argument. During the RCr 11.42 evidentiary hearing, Rohrback testified he did not recall that Cox had, as the record demonstrates, moved to suppress his incriminating statements. Nor did he recall, as the record demonstrates, that he attended the suppression hearing with Cox. Rohrback later acknowledged during his testimony that he was in the courtroom with Cox during the suppression hearing, but he insisted that he still could not remember watching the recording or hearing the audio of his confession at that time.

-19-

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. And, "the test for effectiveness is not whether counsel could have done more, but rather whether counsel's errors undermined the reliability of the trial." *Baze v. Commonwealth*, 23 S.W.3d 619, 625 (Ky. 2000), *overruled on other grounds by Leonard*, 279 S.W.3d 151 (citations omitted). We discern no ineffective assistance by trial counsel on this claim.

Lastly, Rohrback asserts that each of his claims set forth above demonstrate that Cox failed to provide him "conflict-free" assistance of counsel. We disagree. As discussed, each of his claims set forth above is either unpreserved or lack merit.

## CONCLUSION

We have reviewed the breadth of Rohrback's claims. In sum, the circuit court committed no error below; and the additional arguments Rohrback presents on appeal present no basis for invalidating the circuit court's decision to deny his RCr 11.42 motion. Accordingly, we AFFIRM.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Jeffrey L. Rohrback, *pro se*
LaGrange, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky