RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0132p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

GARY R. WOOLBRIGHT,

　　　　　　　*Petitioner-Appellant,*

*v.*

COOKIE CREWS, Warden,

　　　　　　　*Respondent-Appellee.*

No. 13-6115

---

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 1:12-cv-00080—Thomas B. Russell, District Judge..

Argued: March 10, 2015

Decided and Filed: June 29, 2015

Before: SILER, ROGERS, and COOK, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Edmund S. Sauer, BRADLEY ARANT BOULT CUMMINGS LLP, Nashville, Tennessee, for Appellant. James C. Shackelford, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Edmund S. Sauer, Jessica Jernigan-Johnson, BRADLEY ARANT BOULT CUMMINGS LLP, Nashville, Tennessee, for Appellant. James C. Shackelford, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

---

**OPINION**

---

SILER, Circuit Judge. Petitioner Gary Woolbright appeals the district court's denial of the ineffective-assistance-of-trial-counsel (IATC) claims contained in Woolbright's federal habeas petition. For the reasons stated below, we **DENY** the Warden's motion to vacate the

1

certificate of appealability, **AFFIRM IN PART** the district court's denial of three IATC claims, **REVERSE IN PART** the district court's denial of four additional IATC claims, and **REMAND** for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

Woolbright was indicted in 2001 by a Kentucky grand jury for murder, tampering with evidence, receipt of stolen property, trafficking in a controlled substance, and possession of a controlled substance. A jury subsequently found him guilty of wanton murder, receiving stolen property with intent to manufacture methamphetamine, first degree possession of a controlled substance, and first degree trafficking in a controlled substance. *See Woolbright v. Commonwealth*, No. 2003-SC-0368-MR, 2005 WL 2045485, at *1 (Ky. Aug. 25, 2005). Woolbright was sentenced to fifty-five years in prison. *Id*. His appeal to the Kentucky Supreme Court was affirmed. *Id*. at *8.

In 2006, Woolbright filed a *pro se* motion under Kentucky Rule of Criminal Procedure 11.42 to vacate his conviction. The Kentucky trial court scheduled an evidentiary hearing and appointed counsel. Appointed counsel did not file a supplemental memorandum but instead requested leave for Woolbright to file one himself. The trial court subsequently found "that no evidentiary hearing [was] required" and denied the *pro se* petition. New counsel was appointed to assist Woolbright in his post-conviction appeal to the Kentucky Court of Appeals. The appeals court affirmed the trial court's denial of the Rule 11.42 petition, *Woolbright v. Commonwealth*, 2009-CA-001689-MR, 2011 WL 1327362 (Ky. Ct. App. Apr. 8, 2011), and the Kentucky Supreme Court denied review.

In 2012, Woolbright filed a *pro se* petition in federal district court for habeas corpus relief. His petition raised ineffective assistance of counsel and due process claims. In relevant part, Woolbright enumerated seven instances of ineffective assistance of trial counsel that were not adjudicated on the merits by the Kentucky Court of Appeals. Four of these claims allege trial counsel's failure to: (1) interview exculpatory witnesses; (2) object to, and request a mistrial for, prosecutorial misconduct during the sentencing phase of the trial; (3) investigate the ownership of a second gun found at the scene; and (4) make a double jeopardy objection to charges of both possession and trafficking of controlled substances. None of these claims were raised in

Woolbright's *pro se* Rule 11.42 petition or his subsequent appeal. Three additional claims allege trial counsel's failure to: (1) prepare a defense to the charge of receiving stolen property or object to an improper jury instruction on that charge; (2) move for a directed verdict on the grounds that the jury verdict was not unanimous; and (3) object to the jury instruction on wanton murder. These three IATC claims were raised in the Rule 11.42 petition but not raised on post-conviction appeal by Woolbright's appointed counsel.

Without holding an evidentiary hearing, the magistrate judge recommended the denial of the habeas petition. The magistrate judge found that all seven IATC claims had been procedurally defaulted, and that Woolbright could not rely on the absence or ineffectiveness of post-conviction counsel to excuse the default. The magistrate judge specifically cited *Coleman v. Thompson*, 501 U.S. 722 (1991), for the proposition that "Woolbright cannot use a claim of ineffective assistance of counsel during post-conviction proceedings to establish 'cause.'" Motivated by "an abundance of caution," the magistrate judge included a pro forma statement that, "As to each claim Woolbright has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different because of the plethora of evidence against him." No additional analysis of the merits of the seven IATC claims was provided.

The district court adopted the magistrate judge's Findings of Facts and Conclusions of Law. The district court denied Woolbright's habeas petition and declined to issue a certificate of appealability (COA).

This court granted Woolbright a COA on the seven IATC claims. After counsel was appointed and an initial brief was filed, the Warden filed a motion to dismiss on the grounds that the COA was improvidently granted. The Warden's main argument was that this court has overlooked the fact that the district court had ruled on the merits of Woolbright's IATC claims. The motion was subsequently referred to this panel for consideration along with the merits.

**STANDARD OF REVIEW**

A federal court may not entertain a habeas claim unless the petitioner has first exhausted his state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838,

845 (1999). In order to exhaust a claim, the petitioner "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). When a petitioner has failed to fairly present his claims to the state courts and no state remedy remains, his claims are considered to be procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996).

If a petitioner's claims are procedurally defaulted, they may not be reviewed by a habeas court unless he can demonstrate "cause" and "prejudice." *McMeans v. Brigano*, 228 F.3d 674, 680 (6th Cir. 2000). In *Coleman v. Thompson*, the Supreme Court set forth a general rule that, "Given that a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review . . . any attorney error that led to the default of [a petitioner's habeas] claims in state court cannot constitute cause to excuse the default in federal habeas." 501 U.S. at 756–57.

However, in recognition of the "critically important" nature of the right to the effective assistance of counsel at trial, *see Trevino v. Thaler*, 133 S.Ct. 1911, 1921 (2013), the Supreme Court has created a narrow exception to *Coleman*. In *Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012), the Court held that "cause" to excuse procedural default can be established in situations where state law bars a petitioner's IATC claims on direct appeal and the petitioner did not have the benefit of effective assistance of counsel at his initial-review collateral proceeding. In *Trevino*, the Court expanded that exception to encompass those situations where a state's procedural system "in theory grants permission [to raise an IATC claim on direct appeal] but, as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so." 133 S.Ct. at 1921.

We review de novo the question of whether the *Martinez/Trevino* exception applies to a particular state system. *See Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014).

## DISCUSSION

This is not the first time this court has been asked to assess a state's procedural system in light of *Martinez* and *Trevino*. In *Sutton*, we ruled that petitioners who were convicted in

Tennessee state courts could avail themselves of the exception. 745 F.3d at 795–96. In doing so, we noted a number of key similarities between the Texas state court system described in *Trevino* and the Tennessee state system. Courts in both states have recognized the extreme difficulty of adequately raising IATC claims on direct appeal. *Id*. at 791–93. In both states, the deadline for post-trial motions occurs well before the deadline for preparation of a trial transcript. *Id*. In both states, courts have encouraged defendants to bring IATC claims on collateral review rather than direct appeal, even going so far as to provide assurances that an IATC claim is not waived simply because it was not presented on direct appeal. *Id*. at 792–93.

The respondent in *Sutton* attempted to distinguish Tennessee from Texas by emphasizing Tennessee's expanded window for amending new-trial motions that were filed within the first 30 days after sentencing. *Id*. at 794. This court refused to give much weight to that distinction because "Tennessee's procedural law creates a presumption that indigent defendants will be represented by trial counsel on appeal, and trial counsel are unlikely to raise their own errors in a motion for [a] new trial." *Id*. This court also found that this expanded window for amendment did not cure the lack of access to a trial transcript during the initial period for filing a new-trial motion. *Id*. at 795.

The respondent in *Sutton* also pointed to the fact that Tennessee courts had, on occasion, taken up IATC claims on direct appeal. *Id*. But this court found that "the message overwhelmingly communicated is that the claims are best resolved . . . in post-conviction proceedings," notwithstanding the occasional review of those claims on direct appeal. *Id*.

## I. Kentucky's Procedural Barriers to IATC Claims on Direct Appeal

Woolbright argues that his opportunity to raise an IATC claim on direct appeal in the Kentucky system was no more meaningful than the opportunity afforded by the Texas and Tennessee systems. He argues that "Kentucky procedural rules presume that an attorney's trial counsel will file any post-trial motions and handle any appeal." And indeed, a procedural rule does state that "It shall be the duty the attorney representing a client at trial under any public advocacy plan to file a notice of appeal if his or her client requests an appeal." Ky. Rev. Stat. § 31.219(1). This is significant because, as the Warden concedes, "Public defenders represent defendants in the overwhelming majority of cases." And whereas the *Sutton* court found it

merely "unlikely" that trial counsel in Tennessee would raise their own errors in a motion for a new trial, in Kentucky "it is unethical for counsel to assert his or her own ineffectiveness." *Humphrey v. Commonwealth*, 962 S.W.2d 870, 872 (Ky. 1998).

The Warden's counterargument is that the two main public defender offices in Kentucky have separate trial and appellate divisions, meaning that "the vast majority of defendants are represented on appeal by attorneys different from those who represented them at trial." But Woolbright's rebuttal is that "new appellate counsel is usually not appointed until after post-trial motions are decided, the notice of appeal is filed, and the appellate record is certified by the court of appeals." This nullifies the benefit of having separate trial and appellate attorneys, at least for purposes of *Trevino*.[1]

Woolbright next turns to the restrictions imposed by Kentucky procedural deadlines. He argues that Ky. R. Crim. P. 10.06(1), which obliges a defendant to file a motion for a new trial within 5 days of the verdict and does not permit extensions, is even more restrictive than corresponding rules in Texas and Tennessee, which allow 30 days from the time of sentencing. Woolbright argues that the inadequacy of the Kentucky time allowance is compounded by the fact that Kentucky does not require trial transcripts to be filed for at least fifty days. *See* Ky. R. Crim. P. 12.02; Ky. R. Civ. P. 75.01.

The Warden contends that access to the trial transcript is unnecessary because defendants can obtain video records of the trial immediately after a verdict is delivered. The Warden further argues that the ability to file a motion to alter, amend, or vacate a judgment within ten days after sentencing and final judgment somehow alleviates the severity of Ky. R. Crim. P. 10.06(1). Neither of these arguments is persuasive. Five days is a very short amount of time to 1) peruse hours of video recording, 2) conduct any additional investigatory work, and then 3) file an appropriate motion for a new trial based on the ineffective assistance of counsel. The time frame is even more inadequate given the fact that a motion for a new trial based on ineffective assistance of counsel would have to be prepared by a new attorney who was not previously involved with the case. *Cf. Humphrey,* 962 S.W.2d at 872.

---

[1]Woolbright also notes that he had the same counsel for trial, post-trial motions, and direct appeal, and argues that it would have been "virtually impossible" for him to retain new counsel that could adequately investigate potential claims and make the necessary new-trial motion within the time allowed by Kentucky rules.

The Warden's argument about the alternative availability of Ky. R. Civ. P. 59.05 is also inadequate. While it is true that in Kentucky, "The Rules of Civil Procedure shall be applicable in criminal proceedings to the extent not superseded by or inconsistent with these Rules of Criminal Procedure," Ky. R. Crim. P. 13.04, the specific time limitation on the filing of new-trial motions contained in the Criminal Rules is almost certainly inconsistent with any effort to use the Civil Rules to "back door" a new-trial motion within a more generous timeframe. Tellingly, the Warden has not cited a single Kentucky case in which Ky. R. Civ. P. 59.05 has been used by a criminal defendant to obtain a new trial or to assert the ineffective assistance of trial counsel. Nor has a case been presented where the Kentucky courts have suggested the viability of such a procedural maneuver. The best support the Warden can muster is a case in which a defendant attempted to withdraw a guilty plea two months after the fact on the basis that his attorney gave him poor advice about the consequences of the plea. *See Commonwealth v. Pridham*, 394 S.W.3d 867, 872–74 (Ky. 2012). But of course, in that situation the defendant was not attempting to undo the results of a fully adjudicated trial, so the five-day deadline in Ky. R. Crim. P. 10.06 did not apply. And even if the Warden had been able to cite a more applicable case, "special, rarely used procedural possibilities" do not negate a pattern of state court determinations "that collateral review normally constitutes the preferred—and indeed as a practical matter, the only—method for raising an ineffective-assistance-of-trial-counsel claim." *Trevino*, 133 S.Ct. at 1920.

The Warden also argues that the difficulty of bringing an effective IATC claim on direct appeal is mitigated by the fact that "sentencing can be extensively delayed." Even assuming arguendo that Ky. R. Civ. P. 59.05 is available for IATC claims, the respondent has not offered any evidence that Kentucky experiences systemic delays in sentencing greater than those in the Texas and Tennessee systems. And while the possibility of immediate access to video records would in theory ameliorate the difference between the Ky. R. Civ. P. 59.05 deadline of 10 days after sentencing and the Texas deadline of 30 days after sentencing, as a practical matter the inability of Kentucky attorneys to assert their own incompetence still poses a major barrier to the effective investigation and assertion of IATC claims prior to certification of the appellate record.

## II. Kentucky's Judicial Commentary Regarding IATC Claims

An important component of *Trevino* was a desire to avoid the "significant unfairness" created when a state system effectively directs defendants to raise IATC claims on collateral review, only to have those claims procedurally defaulted due to the absence of effective counsel at the collateral review stage. *See Trevino*, 133 S.Ct. at 1919–20. This court has acknowledged that concern and gave it significant weight when determining that *Trevino* applied to Tennessee. *See Sutton*, 745 F.3d at 793–94. Woolbright identifies three criteria that support the applicability of *Trevino* to avoid "significant unfairness" in the treatment of IATC claims. He argues that all three of these criteria are satisfied by the Kentucky system and the state's judicial attitude towards IATC claims.

First, Woolbright argues that Kentucky courts, like those in Texas and Tennessee, "routinely recommend that defendants raise their ineffective-assistance claims in post-conviction proceedings." The clearest articulation of this idea comes from *Humphrey v. Commonwealth*, which observed that,

> As it is unethical for counsel to assert his or her own ineffectiveness for a variety of reasons, and due to the brief time allowed for making post trial motions, claims of ineffective assistance of counsel are best suited to collateral attack proceedings, after the direct appeal is over, and in the trial court where a proper record can be made.

962 S.W.2d at 872. This point has been repeatedly emphasized. *See Stacy v. Commonwealth*, 396 S.W.3d 787, 793 (Ky. 2013) (quoting *Humphrey*); *Leonard v. Commonwealth*, 279 S.W.3d 151, 160 (Ky. 2009) ("[T]his Court has held that claims of ineffective assistance of counsel should not ordinarily be addressed in the course of a direct appeal." (citing *Humphrey*)); *Furnish v. Commonwealth*, 95 S.W.3d 34, 52 (Ky. 2002) ("This court has held as a general rule that claims of ineffective assistance are not properly raised on direct appeal, but rather must proceed by way of a post-trial motion under [Rule] 11.42 to allow the trial court the opportunity to review the issues." (citing *Humphrey*)). Defendants who have not heeded this admonition have often seen their IATC claims rejected as premature. *See Goldsmith v. Commonwealth*, 363 S.W.3d 330, 333 (Ky. 2012); *Evans v. Commonwealth*, No. 2006-SC-000494-MR, 2008 WL 199834, at *5 (Ky. Jan. 24, 2008); *Payne v. Commonwealth*, No. 2004-SC-0269-MR, 2005 WL 1412451, at

*5 (Ky. June 16, 2005). This court has previously noted the strong Kentucky preference for IATC claims to be presented in a Rule 11.42 motion. *See Thacker v. Rees*, 841 F.2d 1127, 1988 WL 19179, at *6 (6th Cir. Mar. 8, 1988) (table).

Second, Kentucky courts have made it clear that even "wholly unpreserved" IATC claims are eligible for "consideration in a proper collateral attack proceeding." *Humphrey*, 962 S.W.2d at 870. This is in keeping with the practice of Tennessee courts, which "hold, as do Texas courts, that failure to raise an ineffective-assistance claim on direct appeal is not grounds for finding the claim waived in post-conviction proceedings." *Sutton*, 745 F.3d at 793. Conversely, just as Tennessee courts have recognized that an IATC claim on direct appeal is "fraught with peril," *id.* at 792, Kentucky courts have noted "the danger in raising an ineffective assistance of counsel claim on direct appeal," *Wilson v. Commonwealth*, 975 S.W.2d 901, 904 (Ky. 1998), due to the fact that "an ineffective assistance claim already rejected in the context of the direct appeal cannot be reraised in the [Rule] 11.42 motion." *Leonard*, 279 S.W.3d at 158 n.3 (discussing *Wilson* and later quoting *Humphrey*).

Woolbright's third *Trevino* criterion is related to the second. Since Kentucky courts do not penalize defendants for failing to raise IATC claims on direct appeal, it logically follows that appellate counsel's decision not to pursue such a claim would not itself constitute ineffectiveness. *See Hale v. Chandler*, No. 6:06-101-KKC, 2009 WL 3161394, at *6–7 (E.D. Ky. Sept. 28, 2009). Texas courts have suggested that same logical conclusion. *Trevino*, 133 S.Ct. at 1919.

In the face of all these similarities, the Warden tries to minimize the impact of *Humphrey* by dismissing its key language as dicta. This argument fails on a number of grounds. First, as seen in the cases collected above, the language in *Humphrey* has been repeatedly cited and quoted by subsequent Kentucky Supreme Court cases. Woolbright has not merely exhumed a long-forgotten judicial aside but instead has pointed to an important leitmotif that Kentucky courts have reemphasized during a period of over fifteen years. Second, some of the cases citing *Humphrey* have specifically identified *Humphrey*'s reluctance to rule on IATC claims as a "general" judicial policy preference that applies even to "ordinary," procedurally adequate claims presented on direct appeal. *See Leonard*, 279 S.W.3d at 160 ("[T]his Court has held that

claims of ineffective assistance of counsel should not ordinarily be addressed in the course of a direct appeal."); *Furnish,* 95 S.W.3d at 52 ("This court has held as a general rule that claims of ineffective assistance are not properly raised on direct appeal, but rather must proceed by way of a post-trial motion under [Rule] 11.42 to allow the trial court the opportunity to review the issues." (citing *Humphrey*, 962 S.W.2d at 872)). Third, the *Trevino* inquiry into the attitudinal posture of state courts is unusual in that it elevates the importance of dicta to a degree not often seen in federal jurisprudence. *Trevino* itself cited cases whose discussions of the problems associated with IATC claims on direct appeals included substantial dicta unnecessary to the disposition of the case. *See* 133 S.Ct. at 1919 (citing *Thompson v. State*, 9 S.W.3d 808, 813–14 & n.6 (Tex. Crim. App. 1999), and *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (en banc) (per curiam)).

The Warden also attempts to find significance in the fact that Kentucky courts have occasionally chosen to decide IATC claims on direct appeal. But as we noted in *Sutton*, "a state's courts of appeals need not decline to hear ineffective-assistance claims on direct appeal in order to be understood as *directing* defendants to raise the claims in collateral proceedings in the manner *Trevino* found significant." 745 F.3d at 795. At best, the Warden's argument can be taken as evidence that Kentucky is not covered by the more categorical rule in *Martinez. Cf. id.* It does not demonstrate that Kentucky defendants have a truly meaningful opportunity to have their IATC claims fully and fairly adjudicated on direct appeal, particularly given the other obstacles and judicial commentary discussed above.

The *Martinez/Trevino* exception applies in Kentucky and thus Kentucky prisoners can, under certain circumstances, establish cause for a procedural default of their IATC claims by showing that they lacked effective assistance of counsel at their initial-review collateral proceedings.

### III.    Woolbright's Claims

As noted above, this appeal includes four IATC claims that were not presented to the Kentucky trial court for initial review and three IATC claims that were presented in

Woolbright's Rule 11.42 petition but not pursued in the Kentucky appeals courts.[2]   This distinction is critical because the holdings in *Martinez* and *Trevino* "[do] not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . . ." *Martinez*, 132 S.Ct. at 1320.  Woolbright has conceded that "under existing law" he cannot establish "cause" based on the failures of post-conviction appellate counsel to pursue the latter three claims.  While we acknowledge Woolbright's efforts to preserve any future argument that "*Martinez* and *Trevino* should be extended to ineffective assistance of post-conviction appellate counsel," *id.* at 35–36, Supreme Court precedent compels us to affirm the district court's denial of the three IATC claims that were presented in the Rule 11.42 petition.  *See id.*

### IV.    The District Court's Ruling on the Merits of Woolbright's Claims

Before briefing on this appeal was complete, the Warden filed a motion to vacate the COA and dismiss the appeal as improvidently granted.  The basis for the motion was that "this Court overlooked the fact that the district court ruled on the merits of the claims at issue in addition to finding the claims had been procedurally defaulted."  The Warden went on to argue that "[c]ontinuing to brief and decide the procedural default is simply a waste of judicial resources."  The motion to dismiss was referred to this merits panel for consideration along with the appellate briefs.

As a threshold matter, it should be noted that defects in a COA do not strip a court of jurisdiction over the appeal.  *See Keeling v. Warden*, 673 F.3d 452, 457 (6th Cir. 2012) (citing *Gonzalez v. Thaler*, 132 S.Ct. 641, 649 (2012)).

"Under normal circumstances, considerations of judicial economy will discourage review of certificates of appealability." *Porterfield v. Bell*, 258 F.3d 484, 485 (6th Cir. 2001).  This is particularly true when the court has "already invested substantial time in the certification process" and the parties have already briefed the issues for the court. *Id.*; *see also Gravitt v. Tyszkiewicz*, 35 F. App'x 116, 117 (6th Cir. 2002).  As Woolbright points out in his opposition to the motion to dismiss, the Warden's motion was filed a full five months after the COA was

---

[2]Woolbright's initial brief to this court erroneously asserted that an IATC claim concerning trial counsel's failure to object to the jury instruction on wanton murder had not been presented in Woolbright's Rule 11.42 petition.  Woolbright has since written a letter to the court that corrects this misstatement.

issued. The intervening appointment of counsel, together with counsel's research of the case and submission of a forty-page brief, represents a substantial investment in the underlying *Martinez*/*Trevino* issue by both counsel and this court. We will not discard that investment; therefore we deny the motion to vacate the COA.

A separate consideration is whether the merits determination of the district court should provide an alternative ground for affirmance in this case. In this regard, two aspects of the district court's ruling should be emphasized: the extreme brevity of the merits ruling and the denial of Woolbright's motion for an evidentiary hearing. Although the magistrate judge's report and recommendation dutifully recites the relevant test for prejudice resulting from the ineffective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668, 694 (1984), the magistrate judge offered nothing more than a blanket statement that none of the seven IATC claims could demonstrate prejudice to Woolbright. This perfunctory, pro forma statement offers virtually no basis to evaluate the district court's merits decision,[3] and this panel cannot even extrapolate from the arguments of the Warden before the district court, because the Warden's opposition to Woolbright's habeas petition did not address the merits of the four IATC claims covered by *Martinez* and *Trevino*.

Furthermore, there is persuasive precedent for reaching the *Trevino* question even though a lower federal court has ruled on the underlying merits of the procedurally defaulted IATC claims. In *Trevino* itself, the district court had alternatively ruled that the IATC claims failed to demonstrate the necessary prejudice.[4] *See Trevino v. Thaler*, 678 F. Supp. 2d 445, 471–72 (W.D. Tex. 2009), *aff'd*, 449 F. App'x 415 (5th Cir. 2011). This merits ruling did not deter the Supreme Court from using *Trevino* as a vehicle for promulgating an expansion of the procedural default exception created by *Martinez*. *See* 133 S.Ct. at 1921–22. And on remand from the Supreme Court, the Fifth Circuit did not reaffirm the district court based on the alternative merits ruling, but instead remanded the whole matter back to the district court for "full reconsideration

---

[3]The district court adopted the magistrate judge's report and recommendation without change or commentary.

[4]Notably, the district court in *Trevino* provided a more substantive explanation of its merits determination than the magistrate judge did in this case. *See Trevino v. Thaler*, 678 F. Supp. 2d 445, 471–72 (W.D. Tex. 2009).

of the Petitioner's ineffective assistance of counsel claim." *Trevino v. Stephens*, 740 F.3d 378 (5th Cir. 2014) (per curiam).

Woolbright has thus far been unable to obtain an evidentiary hearing on his IATC claims in either state post-conviction proceedings or federal habeas proceedings. This absence of factual development (which nullifies a key advantage of bringing such IATC claims in collateral proceedings) hamstrings this court's ability to determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. We therefore remand this matter back to the district court for a "full reconsideration" of the four IATC claims that were not previously presented to the Kentucky courts in collateral proceedings and consideration of whether to conduct an evidentiary hearing. This reconsideration would first address whether Woolbright can demonstrate (1) the absence or ineffective assistance of his post-conviction counsel and (2) the "substantial" nature of his underlying IATC claims. *See Sutton*, 745 F.3d at 795–96. If Woolbright can demonstrate these two elements and therefore establish cause to excuse his procedural default, the district court can then reconsider whether Woolbright can establish prejudice from the alleged ineffective assistance of trial counsel.

For the reasons stated above, we **DENY** the Warden's motion to vacate the certificate of appealability, **AFFIRM IN PART** the district court's denial of a writ on three IATC claims previously presented to the Kentucky courts, **REVERSE IN PART** the district court's denial of a writ on four IATC claims that were never presented to the Kentucky courts, and **REMAND** for further proceedings consistent with this opinion.