**Michael Paul BRIZENDINE, Petitioner–Appellant,**

v.

**Philip W. PARKER, Warden, Kentucky State Penitentiary, Respondent–Appellee.**

No. 12–6564.

United States Court of Appeals, Sixth Circuit.

March 25, 2016.

BEFORE: CLAY, GILMAN, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Michael Brizendine seeks an evidentiary hearing to prove that his trial counsel was constitutionally ineffective. Having procedurally defaulted this claim for purposes of his habeas corpus petition under 28 U.S.C. § 2254, Brizendine must establish that his post-conviction counsel was ineffective and any underlying ineffective assistance of trial counsel claim is substantial, meaning it has at least "some merit." We agree with Brizendine that there is some merit to his claim that his trial counsel was ineffective for failing to investigate and argue that the missing wallet found at the crime scene belonged to a victim and the victim's pocket had been pulled out by the police, not Brizendine. We also agree that this evidence could undermine proof of the robbery for which Brizendine was convicted. We affirm the district court in part, reverse in part, and

remand for an evidentiary hearing limited to that claim.

## I.

In 1998, a Kentucky jury convicted Brizendine of two counts of wanton murder, two counts of first-degree robbery, and one count of first-degree burglary after the shooting deaths of two men. The Kentucky Supreme Court summarized the underlying facts as follows:

On July 3, 1996, Jeffrey Wilson and Johnny Nash were found dead in Wilson's residence where a drug transaction was intended to take place between the victims, [Brizendine], and George Hobbs, [Brizendine's] co-defendant. Ray Joseph, the middleman who arranged the drug deal and a witness at the joint trial, testified that [Brizendine] and Hobbs went to Wilson's residence to buy a kilogram of cocaine, but once inside spoke words indicating a setup, and pulled guns on Wilson and Nash. Joseph testified that he ran out of the residence to the car and heard several gun shots seconds later. [Brizendine] then ran to the car with a "Tommy Hilfiger" bag. Two weeks later, Hobbs was arrested, and a "Tommy Hilfiger" bag, which had [Hobbs's] ID card attached and contained his wallet and cocaine, was found at the location of his arrest.

(Kentucky S.Ct., Mem. Op., R. 12–8, ID 336–37.)

The jury convicted Brizendine of wanton, as opposed to intentional, murder, which required the jury to find that he "voluntarily participated in the offense of robbery in the first degree and that during the course of that robbery and as a consequence thereof, [a victim] was shot and killed and that by so participating in that robbery the defendant was wantonly engaging in conduct which created a grave risk of death to another, and that he thereby caused [the victim's] death under circumstances manifesting an extreme indifference to human life." The primary evidence placing Brizendine at the scene was testimony from the middleman who arranged the drug deal, Ray Joseph. Prior to trial, Joseph pleaded guilty to charges associated with his involvement in the drug deal and acknowledged that he was cooperating with the government to receive a lower sentence.

Joseph testified as follows. He arranged a drug deal between Brizendine, Hobbs, and Wilson. Brizendine and Hobbs would buy one kilogram of cocaine for $26,000 from Wilson, and Wilson would give Joseph a $500 cut. The day of the incident, Joseph drove Brizendine and Hobbs to Wilson's house. When they arrived, all three went inside. Brizendine was "supposed to have the money," and was carrying a Tommy Hilfiger bag, but Joseph never saw the contents of the bag. Waiting in the front room of Wilson's house, the visitors did not see any drugs. Wilson told the visitors to "give him five minutes." Shortly thereafter, Brizendine walked further into the house—then reappeared in the front room with Johnny Nash. None of the three visitors, including Joseph, had known that Nash would be there. When the visitors realized Nash was there, the situation quickly changed. Brizendine asked "where's the drugs," and Wilson or Nash responded "you got to wait for five minutes." Either Brizendine or Hobbs responded that the situation "looks like a set up." Brizendine and Hobbs drew their guns, making Nash and Wilson lie on the floor. Joseph ran outside toward the car. Within seconds, he heard "[a] couple" of gun shots fired from different guns. Joseph started the car's engine, and Hobbs returned to the car. Joseph started driving, but Hobbs told him to wait for Brizendine, who was running down the

sidewalk. Brizendine was carrying the Tommy Hilfiger bag. According to Joseph, when Brizendine got into the car, he said to Joseph: "[your] friends just got shot and robbed." However, Joseph never saw any money or drugs in the house or the bag, and Brizendine never said of what he had robbed the victims.

The police searched Hobbs's residence two weeks later, where they found a Tommy Hilfiger bag containing cocaine. Hobbs's identification was lying on top of the bag. Hobbs later gave a confession to the police that identified Brizendine, but, because Hobbs and Brizendine were tried together, the confession was redacted at trial to only implicate Joseph. Accordingly, the confession may have benefitted Brizendine.

Brizendine's trial strategy was to establish that (1) there was no physical evidence linking him to the scene, (2) Joseph was not a credible witness, and (3) the police had conducted a flawed investigation. Ultimately, the jury convicted Brizendine of wanton murder, robbery, and burglary. The court sentenced him to life in prison without parole for 25 years, and his convictions were affirmed on direct appeal. As is the practice in Kentucky, *see Woolbright v. Crews,* 791 F.3d 628, 631–36 (6th Cir. 2015), his appellate counsel did not challenge trial counsel's performance on direct appeal. Brizendine filed unsuccessful motions for collateral review in the Kentucky courts.

In 2011, Brizendine filed a habeas petition under 28 U.S.C. § 2254 in federal district court, asserting twenty-three grounds for relief, including several ineffective assistance of trial counsel claims. Respondent moved to dismiss based on Brizendine's procedural default of most claims, and moved for summary judgment on the remaining claims. The magistrate judge recommended granting both mo-

tions. With respect to the two ineffective assistance of trial counsel claims at issue in the instant appeal, the magistrate judge concluded that they were procedurally defaulted because attorney error in state collateral proceedings does not constitute "cause" to overcome procedural default of a habeas claim, even if post-conviction counsel is appointed under state law. Brizendine objected, in part based on the then-recently issued decision of *Martinez v. Ryan,* —— U.S. ——, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). The district court adopted the report and recommendation in part and dismissed Brizendine's petition, reasoning that "[e]ven taking *Martinez* into account ... Brizendine's assertions do not constitute cause" because he failed to show that the underlying claims had "some merit." We granted a certificate of appealability with respect to the two claims at issue in this appeal and whether Brizendine is entitled to an evidentiary hearing on those claims.

## II.

On appeal, Brizendine argues that the district court erred in denying his habeas petition because there is at least "some merit" to his ineffective assistance of trial counsel claims. He maintains that his trial counsel was ineffective for two reasons: first, counsel failed to investigate and present evidence on two related issues, (a) whether the victim's allegedly missing wallet was actually found at the scene of the crime by the police, and (b) whether the police disturbed the crime scene by pulling out Nash's pocket to check for identification; and second, counsel failed to pursue an "extreme emotional disturbance" defense. We review de novo the district court's legal conclusions and mixed questions of law and fact. *Hodges v. Colson,* 727 F.3d 517, 525 (6th Cir.2013). "Whether a petitioner's federal habeas claim is

barred by procedural default is a question that we review de novo." *Id.* at 529 (citation and footnote omitted).

"Generally, in order to respect state court rulings and preserve federalism principles, before a federal court rules on the merits of a petitioner's § 2254 petition: (1) the petitioner must have exhausted his available state remedies, and (2) the petitioner's claims must not be procedurally defaulted." *Atkins v. Holloway,* 792 F.3d 654, 657 (6th Cir.2015) (internal citations omitted). "[W]hen a petitioner fails to present a claim in state court, but that remedy is no longer available to him, the claim is technically exhausted, yet procedurally defaulted." *Id.* (citation omitted). "To excuse such a procedural default, a petitioner must show cause for the default and prejudice from the asserted error." *Id.* (internal quotation marks and citation omitted).

Although an attorney's errors in post-conviction collateral review proceedings do not generally constitute cause to excuse default, *see Coleman v. Thompson,* 501 U.S. 722, 754–55, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court has established an exception for when a state's procedural framework "makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler,* —— U.S. ——, 133 S.Ct. 1911, 1921, 185 L.Ed.2d 1044 (2013) (citing *Martinez,* 132 S.Ct. at 1320). Thus, "procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez,* 132 S.Ct. at 1320. This *Martinez/Trevino* exception applies to Kentucky's legal framework. *Woolbright,* 791 F.3d at 636. Brizendine

must therefore establish that (1) his post-conviction counsel was ineffective, and (2) his underlying claims alleging ineffective assistance of trial counsel are "substantial," "which is to say that ... [they have] some merit." *Martinez,* 132 S.Ct. at 1318–19 (citing *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)).

To be constitutionally ineffective, trial counsel must have performed deficiently based on an "objective standard of reasonableness," measured against "prevailing professional norms." *Higgins v. Renico,* 470 F.3d 624, 631 (6th Cir.2006) (citing *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "These professional norms are judged by reference to the time of representation, and cannot be based on hindsight." *Storey v. Vasbinder,* 657 F.3d 372, 388 (6th Cir.2011). Petitioner must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. We "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter,* 562 U.S. 86, 104, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). Additionally, to establish that trial counsel was ineffective, petitioner must show that counsel's "deficient performance prejudiced the defense" by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 687, 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

## A.

Brizendine seeks an evidentiary hearing to establish that the wallet listed on a police inventory belonged to Nash and that first-responding police officers disturbed the crime scene by pulling out Nash's pocket. This, Brizendine argues, would show that his counsel's performance was prejudicial because it would have undermined the prosecution's theory that Brizendine went through Nash's pockets and stole things after the murders. However, to reach this point, we must first determine whether there is at least "some merit" to Brizendine's argument that his trial counsel's performance fell below an objective standard of reasonableness.

In *Strickland*, the Supreme Court explained,

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Id.* at 690–91, 104 S.Ct. 2052. "The Supreme Court has cautioned that attorneys do not need to investigate exhaustively every aspect or potential angle of the defendant's case. '[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste.'" *Jackson v. Warden, Chillicothe Corr. Inst.*, 622 Fed.Appx. 457, 462 (6th Cir.2015) (quoting *Rompilla v. Beard*, 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)) (alteration in original). Failure-to-

investigate claims typically fall within two categories: (1) failure to "conduct any investigation or perform basic investigative steps such as reviewing known evidence or interviewing witnesses," or (2) failure to pursue evidence that the record suggested would provide "fruitful leads that a reasonable attorney would have pursued." *Id.* at 462–63.

In *Wiggins v. Smith*, the Supreme Court considered a case in the second category: whether an attorney had performed deficiently by failing to investigate leads in the presentence investigation report and other records in the defendant's background that suggested abuse and other facts useful for mitigating evidence at sentencing. 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Holding counsel's performance was deficient, the Court explained that the central inquiry in these cases is "not whether counsel should have presented a mitigation case [but] whether the investigation supporting counsel's decision not to introduce mitigating evidence ... *was itself reasonable.*" *Id.* at 523, 123 S.Ct. 2527 (emphasis in original).

■ From the record, we know that (1) a police department inventory of evidence found at the crime scene listed a wallet (evidence collected by Det. Parrish), but trial counsel did not investigate whether the wallet belonged to Nash; (2) there was a detective's "investigative letter" in the prosecutor's evidence discussing the relevance of Nash's pocket; (3) the prosecutor argued to the court that the photo of Nash's pocket (exhibit 58) was relevant and not cumulative of other photos because "Mr. Nash's back pocket appears to have been partially turned inside out. That's something that's described by the detective in the investigative letter. [Thus] ... the jury could infer that in fact he had personal items removed from [his pocket] after he had been shot, so that's

the specific thing that I intend to show with this photograph"; (4) Detective Clark testified that the crime scene may have been disturbed before he arrived, explaining that he took the crime scene photo of Nash's pocket because he "was a little concerned about [the victim's] back pocket being turned inside out"; (5) defense counsel argued in support of a motion for a directed verdict of acquittal that the prosecution's best evidence of robbery was Nash's "slightly out-turned pocket," without any "allegations that anything was taken, no jewelry, no physical evidence that has been found on my client"; (6) defense counsel never interviewed first-responding officers to determine if they disturbed Nash's pocket; (7) defense counsel did not argue to the jury that police officers, as opposed to Brizendine, disturbed Nash's pockets; and (8) defense counsel did not argue that a wallet had been found by the police at the scene or that it might have belonged to Nash.

The record suggests that there is at least some merit to the argument that there were fruitful leads that a reasonable attorney would have pursued. In light of *Wiggins*, 539 U.S. at 523–34, 123 S.Ct. 2527, we view counsel's failure to capitalize on Detective Clark's testimony—that officers may have disturbed Nash's pocket—in conjunction with counsel's failure to investigate the wallet. Even if the former was a strategic decision, such a decision "made after less than complete investigation" is only reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052. We cannot conclude that reasonable professional judgment supports counsel's failure to investigate the origin of the wallet and out-turned pocket. Brizendine has thus established that there is "some merit" to his claim that trial counsel's perform-

ance was deficient, which is all that is required at this stage.

### B.

To warrant an evidentiary hearing, Brizendine must likewise establish that there is "some merit" to his claim that his trial attorney's performance prejudiced him. Respondent argues that Brizendine cannot establish that he was prejudiced because there is other evidence of robbery. That evidence is: (1) Joseph's testimony that Brizendine carried a Tommy Hilfiger bag into and out of Wilson's residence, (2) Joseph's testimony that Brizendine said Joseph's "friends just got shot and robbed," (3) the discovery of cocaine in a Tommy Hilfiger bag at Hobbs's house two weeks later, and (4) a photograph of the crime scene documenting a pair of blue jeans laying on Wilson's body, which the prosecutor argued showed that defendants were "going through pockets of jeans and other pairs of pants in the living room seeing what they [could] find."

For purposes of establishing prejudice to overcome procedural default, we consider only whether there is "some merit" to Brizendine's argument that he was prejudiced. In this case, were Brizendine to establish that the wallet at the scene was Nash's and the police had pulled out Nash's pockets, he would probably negate the prosecution's theory that Brizendine went digging through pants looking for wallets. It does not, however, neutralize Joseph's testimony about the Tommy Hilfiger bag and Brizendine's statement that Joseph's friends had just been robbed. But, to convict Brizendine of robbery, the jury would have had to believe that Brizendine stole drugs or money and put them in the bag or took something else from Nash other than his wallet. Yet Joseph never saw any drugs or money and the cocaine was not found in the bag until two

weeks later, at Hobbs's house. Because Brizendine's theory, if proven, would significantly undermine the prosecution's evidence of robbery, there is "some merit" to his argument that he was prejudiced. As Brizendine emphasizes on appeal, he has never had the opportunity to develop this argument in habeas proceedings because he has not been granted an evidentiary hearing. Thus, if we conclude that his post-conviction counsel was ineffective, he is entitled to an evidentiary hearing to prove the merits of his claim.

### C.

■ To overcome procedural default, Brizendine must establish that his post-conviction counsel was constitutionally ineffective. Brizendine began the Kentucky collateral review process in 2001 by filing a motion to vacate and set aside his sentence pursuant to Kentucky Rule of Criminal Procedure 11.42. The motion contained conclusory legal assertions but lacked a discussion of the facts or law in support of the legal assertions. When the collateral review court appointed Brizendine counsel, it ordered counsel to supplement Brizendine's motion to vacate within ninety days. Appointed counsel wrote Brizendine a letter two weeks later indicating that he would "begin working" on the case and would contact Brizendine as needed. Although post-conviction counsel met with Brizendine "on several occas[ ]ions" "[o]ver the next several years," he never filed a supplemental memorandum. Indeed, the Kentucky courts observed that no one "supplemented the motion and the matter remained dormant for almost five years." According to Brizendine, the deadline for filing Rule 11.42 motions for collateral review claims expired on November 17, 2003. *See* Ky. R.Crim. P. 11.42(10) (requiring a motion to vacate to be "filed within three years after the judgment becomes final").

Despite the fact that Brizendine's originally filed motion to vacate was incomplete without a supplemental memorandum, almost five years after his appointment, post-conviction counsel finally filed a motion to submit on the pleadings. The motion stated, in relevant part:

> Following appointment to the case herein, counsel met with the movant, reviewed the record with the assistance of staff and made an investigation of the movant's *pro se* allegations. After a review counsel has found no *additional facts or issues* for supplementation and therefore submits this action based upon the *pro se* pleadings.

(Emphasis added.) According to Brizendine, post-conviction counsel made the filing without his knowledge. Brizendine argues that, even if his claims had not already expired, the motion to submit on the pleadings was effectively a motion to "abandon[ ] them entirely" because Brizendine's *pro se* pleadings to that point were insufficient on their face to satisfy Rule 11.42.

Thereafter, the Commonwealth filed a motion submitting the matter for final adjudication. Post-conviction counsel filed a motion to open the record for submission of a *pro se* memorandum, and Brizendine filed a *pro se* memorandum. The record also suggests that post-conviction counsel submitted an unprompted response to one of Brizendine's *pro se* filings (this one for "appointment of private counsel") that outlined post-conviction counsel's "considerable efforts he expended in his representation of appellant," but nothing in the record explains why post-conviction counsel failed to comply with the court's ninety-day deadline, or file anything before the three-year deadline. Brizendine further notes that nothing in the record indicates that post-conviction counsel under-

took his "considerable efforts" prior to those deadlines.

In February 2007, the collateral review court accepted the motion to submit on the pleadings, denied Brizendine's request to submit a *pro se* supplemental memorandum, and dismissed his collateral review claims. Absent a supplemental memorandum, Brizendine's pleadings failed to satisfy the specificity requirements of Rule 11.42. The Kentucky Court of Appeals affirmed the denial of relief, and the Kentucky Supreme Court denied discretionary review. Brizendine also filed a *pro se* petition for writ of habeas corpus, asserting various constitutional violations. The Kentucky courts denied the petition on the basis that the claims should have been addressed on direct appeal or collateral review proceedings.

In the instant appeal, respondent does not dispute that Brizendine's post-conviction counsel was ineffective. We agree with Brizendine that post-conviction counsel was constitutionally ineffective for failure to submit a supplemental memorandum by the three-year deadline. Accordingly, Brizendine has satisfied his burden with respect to post-conviction counsel and is entitled to an evidentiary hearing to prove the merits of his first claim.

### III.

█ Finally, we granted a certificate of appealability to Brizendine on a second ineffective assistance of trial counsel claim: that counsel was ineffective for failure to pursue an "extreme emotional disturbance" defense. "A finding that a defendant acted under the influence of extreme emotional disturbance is a defense to the charge of murder because it mitigates the mens rea element of that offense." *Spears v. Commonwealth*, 30 S.W.3d 152, 154 (Ky. 2000). The defense "is the successor to the common law concept of 'sudden heat of passion.'" *Id.* It is a "'temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes.'" *Id.* at 155 (citation omitted).

The district court rejected this claim under *Martinez* because it would have required defense counsel to present two inconsistent defense theories. We agree. Defense counsel's theory of the case at trial was that Brizendine was not at the drug deal: there was no physical evidence connecting him to the scene, Joseph was not a credible witness, and the police had conducted a flawed investigation. Applying a "strong presumption" of acceptable performance, we conclude that it is within the "wide range" of professional representation for defense counsel to conclude that this approach was superior to an extreme emotional disturbance defense.

To the extent that the two theories could have been offered in the alternative, defense counsel could have made the strategic decision not to present an alternative defense that may have confused the jury into thinking that Brizendine was implicitly admitting that he was at the crime scene. Moreover, co-defendant Hobbs's counsel asked for an instruction for an extreme emotional disturbance defense and the trial court denied it, reinforcing defense counsel's strategic decision. In sum, Brizendine's argument that his counsel was constitutionally deficient for failure to adopt these defense theories in the alternative is without merit. This claim does not warrant an evidentiary hearing.

### IV.

Brizendine has established, for purposes of overcoming the procedural default of his

first ineffective assistance of trial counsel claim, that there is "some merit" to his arguments that his trial counsel's performance was defective and that such performance prejudiced him. He has also established that his post-conviction counsel was ineffective. We therefore affirm the district court in part, reverse in part, and remand for the limited purpose of holding an evidentiary hearing on whether (1) trial counsel's failure to investigate was constitutionally defective, and (2) whether that deficiency prejudiced Brizendine.